**SERGENIAN LAW**

a Professional Corporation

David A. Sergenian, State Bar No. 230174
david@sergenianlaw.com
808 Wilshire Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (213) 435-2035

Counsel for Plaintiff KEN WANG

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN WANG, an individual, | Case No. 3:26-cv-3111-WHO |
| Plaintiff, | **PLAINTIFF KEN WANG'S COMBINED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT [DKT. NOS. 18 AND 19]** |
| v. | |
| FRED JIN, an individual; XIN JIN, an individual; MAREN SCHWARZER, an individual; MARTIJN BROERSMA, an individual; BRAD BAO, an individual; FRANCOIS GRANADE, an individual; CEREBELLUM NETWORKS, INC., a Delaware corporation; INTERDATA NETWORK INC., a British Virgin Islands entity; BNW NETWORK GMBH, a German entity; CEF AI INC., a Delaware corporation; and DOES 1–50, inclusive, | |
| Defendants. | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................ 1

    A.  The PSLRA Does Not Bar Wang's RICO Claims, Which Rest on Predicate Acts That Are Not Actionable as Securities Fraud and That Directly Injured Wang ....................... 1

    B.  The Bonus Claim Is Not Time-Barred on the Face of the Complaint Because the Date of Breach Is a Disputed Question ................................................................................ 4

    C.  The Contract Claims Are Properly Asserted Against the Signatories to Each Agreement ............................................................................................................................. 5

    D.  The Fiduciary Duty Claim Is Direct Because It Rests on Disloyalty Targeted at Wang Individually, Not on Harm Shared by All Stockholders ...................................... 5

    E.  The Conversion Claim States a Claim as to Wang's Token Allocation ........................... 7

    F.  The Section 496 Claim States a Claim for Theft of Wang's Tokens ............................... 7

    G.  The Common Law Fraud Claim Is Pleaded with Particularity (Count Three) ............... 8

    H.  The Malicious Prosecution Claim (Count Twelve) Pleads a Favorable Termination on the Merits, and the Pendency of an Appeal Presents a Factual Question That Cannot Be Resolved Against Wang on the Pleadings ............................................................ 8

    I.  The Economic Loss Rule Does Not Apply to the Seven Claims Jin Invokes It Against 11

        1.  The Rule Bars Only Negligently Inflicted Economic Loss; It Does Not Reach Intentional Torts ................................................................................................. 12

        2.  Paragraph 154 Pleads a RICO Injury; It Concedes Nothing About the Other Counts .................................................................................................................. 12

        3.  The Rule Does Not Govern Wang's Federal RICO Claims (Counts One and Two) ...................................................................................................................... 12

        4.  Breach of Fiduciary Duty Rests on a Duty Imposed by Law (Count Ten) ........ 13

        5.  Wang's Tokens Are His Own Property, Not the Subject of any Contract (Counts Five and Six) ...................................................................................................... 13

        6.  Affirmative Fraud Independent of the Breach is Not Barred (Count Three) ..... 13

- 1 -

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

7.      Unjust Enrichment Is a Quasi-Contract Claim, Not a Tort (Count Eleven) ....... 14

8.      A Defendant Who Owes No Contract Duty Cannot Invoke the Economic Loss Rule ........................................................................................................................ 14

J.      Rule 13(a) Is Not a Basis for Dismissal, and the Term Sheet's Forum Clause Forecloses Defendants' Duplication Argument .................................................................................. 15

K.      Jin Is a Party to the Term Sheet and the SRA in His Individual Capacity and Cannot Escape Counts Eight and Nine on the Pleadings ................................................................. 16

L.      The Securities Claim (Count Four) Should Not Be Dismissed ...................................... 17

1.      Wang Has Purchaser-Seller Standing, or the Issue Cannot Be Resolved on the Pleadings ........................................................................................................................ 17

2.      The Limitations Defense Cannot Be Resolved on the Pleadings ...................... 17

3.      The Lockup Misrepresentation Is Pleaded with Particularity, and Any Remaining Gaps Are Curable ..................................................................................... 18

4.      Loss Causation Is Pleaded or Amendable ............................................................. 18

M.      The RICO Counts Satisfy Rule 9(b) and Plead a Continuing Pattern (Counts One, Two) .......................................................................................................................................... 18

1.      The Predicate Acts Are Pleaded with Particularity ............................................ 18

2.      The Complaint Pleads Continuity .......................................................................... 19

N.      Wang Pleads Cognizable RICO Injury to Business and Property (Counts One, Two) .. 19

O.      The Complaint Does Not Engage in Impermissible Group Pleading (Counts Three, Four, and the RICO Counts) .......................................................................................................... 20

P.      Unjust Enrichment (Count Eleven) Is Properly Pleaded in the Alternative .................. 21

Q.      The Declaratory Relief Claim (Count Fourteen) Serves a Useful Purpose ................... 21

R.      The False Imprisonment Claim (Count Thirteen) States a Claim ................................. 22

1.      The Detention and Travel Ban Are Actionable Confinement ............................ 22

2.      During the Pendency of the Charges, Defendants Procured the Confinement Through Knowingly False Information ................................................................. 22

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

SERGENIAN LAW
a Professional Corporation

3.    The Continuing Post-Acquittal Ban Underscores that the Restraint Never Rested on Lawful Process ........................................................................................................... 23

4.    The Act-of-State Doctrine Does Not Bar the Claim ........................................... 23

III.    CONCLUSION ........................................................................................................... 23

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

**TABLE OF AUTHORITIES**

**Cases**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)....................................................................3

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015).........................................21

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ...................................................11

*Bell v. Feibush*, 212 Cal. App. 4th 1041 (2013) .......................................................................7

*Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43 (1974) ............................................................9, 11

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)..............................................17

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)...................................................3

*Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004) ..........................................................9

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011)..........................4

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) .........................................................................20

*Du Lac v. Perma Trans Prods., Inc.*, 103 Cal. App. 3d 937 (1980)..................................22, 23

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ............................................................18

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ......................8, 10, 18

*Erlich v. Menezes*, 21 Cal. 4th 543 (1999)............................................................................13

*Fermino v. Fedco, Inc.*, 7 Cal. 4th 701 (1994) .....................................................................22

*Friedman v. Stadum*, 171 Cal. App. 3d 775 (1985).........................................................9, 10

*Hagberg v. California Federal Bank*, 32 Cal. 4th 350 (2004)................................................22

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) ...............................................19

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992)...........................................................2

*Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000).............................................3

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980)...................................................4

SERGENIAN LAW
a Professional Corporation

- 4 -

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) ...................................................................... 7

*Lacagnina v. Comprehend Systems, Inc.*, 25 Cal. App. 5th 955 (2018) ..................................... 8

*Lackner v. LaCroix*, 25 Cal. 3d 747 (1979) ............................................................................... 9

*Lantz Retirement Investments, LLC v. Glover*, 2020 U.S. Dist. LEXIS 17265 (E.D. Cal. Jan. 31, 2020) ........................................................................................................................... 3, 4

*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) ..................................................................... 13

*Lee v. Hanley*, 61 Cal. 4th 1225 (2015) ..................................................................................... 7

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ....................................................................... 17

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) .......................................................................... 6

*Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783 (9th Cir. 1992) ....................................... 20

*Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1 (2024) ............................................................ 12, 14

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866 (9th Cir. 2010) ............... 2, 3, 4

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004) ...................................... 12, 13, 14

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014) ........................... 14

*Sangster v. Paetkau*, 68 Cal. App. 4th 151 (1998) ................................................................... 11

*Scofield v. Critical Air Medicine, Inc.*, 45 Cal. App. 4th 990 (1996) ...................................... 22

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064 (9th Cir. 2018) .............................. 23

*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863 (1989) ................................................ 11

*Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022) ........................................... 7

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...................................................... 3, 18, 20

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) ............................ 5, 6

*Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*, 12 Cal. App. 4th 1354 (1993) ............... 5

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) ........................................................................ 19

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) ......................... 16

SERGENIAN LAW
a Professional Corporation

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................................ 8, 20

*Voris v. Lampert*, 7 Cal. 5th 1141 (2019) ................................................................................. 13

*Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893 (1983) ...................................................... 11

*W.S. Kirkpatrick & Co. v. Env'l Tectonics Corp.*, 493 U.S. 400 (1990) ................................... 23

**Statutes**

18 U.S.C. § 1964(c) ................................................................................ 1, 2, 3, 13, 20

28 U.S.C. § 1658(b) ................................................................................................ 17

Cal. Civ. Code § 47(b)(5) ........................................................................................ 22

Cal. Code Civ. Proc. § 337(a) .................................................................................... 4

**Rules**

Fed. R. Civ. P. 8(d)(2)–(3) .................................................................................... 2, 21

Fed. R. Civ. P. 13(a)(1) .......................................................................................... 15

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 10

Fed. R. Civ. P. 23.1 ................................................................................................ 6

Fed. R. Civ. P. 42(a) .............................................................................................. 15

Civil L.R. 3-12 ...................................................................................................... 15

**Other Authorities**

Restatement (Second) of Torts § 45A ....................................................................... 22

SERGENIAN LAW
a Professional Corporation

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

## I. INTRODUCTION

This action arises from Defendant Fred Jin's systematic looting of a company Plaintiff Ken Wang co-founded, and from the campaign of retaliation Jin and his associates waged when Wang exposed it. The Complaint pleads, in particularized detail, that Jin diverted millions in corporate funds to wallets he controlled, destroyed Wang's own vested token allocation through a deliberately defective smart contract, repudiated Wang's compensation and equity, and, when Wang sought redress, caused a baseless criminal prosecution in Dubai that ended in Wang's acquittal on the merits. Complaint ("Compl.") [Dkt. No. 1] ¶¶ 80–81, 92–105, 130–135.

Defendants' two motions [Dkt. Nos. 18, 19] do not test the sufficiency of those allegations so much as dispute them. Nearly every argument asks the Court to resolve a contested factual question against Wang at the pleading stage, or to read documents submitted through defendants' Request for Judicial Notice for the truth of matters Wang disputes. Neither is permissible on a Rule 12(b)(6) motion. Taken as true and read in the light most favorable to Wang, the Complaint states each of its claims.

The motions fail for reasons specific to each claim, developed below, but several themes recur. The PSLRA does not bar Wang's RICO claims because they rest on predicate acts (the destruction of Wang's tokens, the embezzlement and laundering of corporate funds, witness tampering) that no securities purchaser or seller could assert and that injured Wang directly. The contract claims are timely and are pleaded against the parties who signed each agreement. The breach of fiduciary duty claim is direct, resting on disloyalty Jin aimed at Wang individually. The malicious prosecution claim pleads an acquittal on the merits, and whether the Public Prosecution's appeal defeats finality is a factual question defendants cannot resolve by judicial notice. And the economic loss rule, a product defect doctrine, reaches none of the claims Jin invokes it against. To the extent the Court finds any deficiency, leave to amend should be granted, as amendment would not be futile.

## II. ARGUMENT

### A. The PSLRA Does Not Bar Wang's RICO Claims, Which Rest on Predicate Acts That Are Not Actionable as Securities Fraud and That Directly Injured Wang

The RICO Amendment bars reliance only on "conduct that would have been actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c). The Ninth Circuit confines this bar to fraud

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

SERGENIAN LAW
a Professional Corporation

substantively connected to a securities transaction; it does not reach conduct merely because securities figure somewhere in a defendant's broader scheme. *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871–72 (9th Cir. 2010) (quoting 18 U.S.C. § 1964(c)). Where "the securities were merely a happenstance cog in the scheme," "[t]he fraud bore an insufficient connection to the securities," and the bar does not apply, as the Ninth Circuit held in affirming the denial of summary judgment on the PSLRA issue. *Id.* at 872. The inquiry proceeds predicate by predicate: the question is whether the specific conduct "would have been actionable as fraud in the purchase or sale of securities," not whether allegations regarding tokens appear elsewhere in the case. *Id.* at 871 (quoting 18 U.S.C. § 1964(c)).

Wang's RICO claims do not depend on the token promotion misrepresentations underlying Count Four. Nor do they seek the resulting token price diminution as RICO injury. The RICO injury is the deprivation of Wang's own property through predicate acts: the locked-token wire fraud, the diversion and laundering of corporate funds, and witness tampering. None is actionable as fraud in the purchase or sale of a security. Foremost, the Complaint alleges that Jin furnished Wang a deliberately defective smart contract that permanently locked Wang's own approximately 861 million $CERE tokens, which is pleaded as "an independent act of fraud and conversion, and an additional predicate act of wire fraud in furtherance of the RICO enterprise." Compl. ¶ 81. That is not a misrepresentation inducing any purchase or sale; it is the technical destruction of compensation Wang had already been granted. The Complaint further alleges wire transfers effecting the diversion of $16.6 million in Regulation D funds and the looting of five corporate wallets (*id.* ¶¶ 92–93, 100–105, 140, 141)—embezzlement and laundering of corporate funds, not fraud "in connection with" a securities transaction—and witness tampering directed at former employees and whistleblowers, not purchasers. *Id.* ¶ 142. Under *Rezner*, these are "happenstance cog[s]," and together they form a pattern wholly apart from any token-promotion misrepresentation. Pleading Count Four in the alternative concedes nothing here. Fed. R. Civ. P. 8(d)(2)–(3). Under *Rezner*, the PSLRA bar turns on the nature of the predicate acts, not on whether Wang also pleaded a securities count.

*Rezner*'s proximate cause holding, which defendants invoke separately, does not defeat Wang's standing. RICO causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *accord Anza v. Ideal Steel*

- 2 -

*Supply Corp.*, 547 U.S. 451, 461 (2006). The plaintiff in *Rezner* failed that test only because the immediate victim of the tax shelter fraud was the United States, not the plaintiff. *Rezner*, 630 F.3d at 873–74. Here, the relation is exact: the deliberately defective smart contract deprived Wang, and no one else, of his own 861 million tokens. Compl. ¶ 81. And to the extent any predicate operated through investor reliance rather than Wang's, that is not an obstacle because a plaintiff directly injured by a fraudulent scheme may recover even where a third party, not the plaintiff, relied on the misrepresentation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008).

The money laundering predicates independently survive the bar because they address laundering embezzled corporate assets, not the proceeds of any securities sale. Defendants invoke *Lantz Retirement Investments, LLC v. Glover*, 2020 U.S. Dist. LEXIS 17265, at *23 (E.D. Cal. Jan. 31, 2020), for the proposition that laundering the proceeds of fraudulent securities transactions is itself actionable as securities fraud and thus barred. That reasoning reaches only proceeds traceable to a securities sale. The diversion and looting predicates here are of a different character. The Complaint alleges that Jin diverted at least $16.6 million already raised and held in Cerebellum's corporate fundraising wallet into personal wallets (Compl. ¶¶ 91–93), and looted at least five additional corporate cryptocurrency wallets holding corporate treasury assets (*id*. ¶¶ 99–105), pleading both as the theft of "corporate assets" entrusted to Jin for corporate purposes. *Id.* ¶¶ 50, 105. The 12E, 28a, and 037 wallets held corporate cryptocurrency that Jin agreed to move to managed custody and instead diverted to personal trading. *Id.* ¶¶ 101–103. Embezzlement of a company's own assets is not "actionable as fraud in the purchase or sale of securities," and laundering its proceeds is therefore not barred. These predicates take corporate property after it reached the corporate treasury; they do not depend on any misrepresentation to a purchaser or seller, and they are the *Rezner* "happenstance cog," outside Section 1964(c) and outside *Lantz*.

Defendants' authorities do not require dismissal. *Howard v. America Online, Inc.*, 208 F.3d 741, 749–50 (9th Cir. 2000), and *Swartz v. KPMG LLP*, 476 F.3d 756, 760–61 (9th Cir. 2007), each involved fraud directly connected to the securities transaction—conduct *Rezner* later distinguished from predicates that operate outside it. *Trachsel v. Buchholz*, 2009 U.S. Dist. LEXIS 4219, at *11 (N.D. Cal. Jan. 9, 2009), pre-dates *Rezner* and concerned a single-episode kickback at the moment of purchase. And

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

*Lantz* neither cited *Rezner* nor barred amendment; it granted leave precisely because RICO predicates may reach conduct distinct from the securities transaction. Counts One and Two should not be dismissed.

**B.      The Bonus Claim Is Not Time-Barred on the Face of the Complaint Because the Date of Breach Is a Disputed Question**

A limitations defense supports dismissal under Rule 12(b)(6) only when "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citations omitted); *accord Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (dismissal proper "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove" the claim is timely). Whether the Bonus Agreement claim is time-barred turns on when Jin breached, and the Complaint does not establish that date as a matter of law.

A breach-of-contract claim accrues at the time of breach, not when the obligation first comes due. *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 488 (1996); Cal. Code Civ. Proc. § 337(a). Defendants conflate the two. They read Paragraph 210, which states that the bonus "became due and payable on April 21, 2021," as fixing accrual. But the date an obligation becomes due fixes when performance is owed, not when the claim accrues; accrual requires a breach. *Id.* The Complaint does not allege that Jin refused payment in 2021. It alleges that Jin treated the bonus as owed and designated approximately $300,000 in a wallet Wang controlled as the payment, and only "later reneged and refused to pay Wang the bonus, falsely accused Wang of misappropriating the funds, [and] denied the bonus was ever owed." Compl. ¶ 212. While Jin held those funds out as satisfying the obligation, no breach had occurred. The Complaint alleges the breach occurred no earlier than April 22, 2023, when Jin, through his counsel's letter accusing Wang of misappropriating the very funds Jin had set aside to satisfy the bonus, first repudiated the obligation and denied the bonus was ever owed. *Id.* ¶¶ 119, 212. That date is within the limitations period, and at a minimum the date of breach is a question of fact.

Because the Complaint does not show on its face that the claim accrued more than four years before suit, dismissal on limitations grounds is improper. The Seventh Cause of Action should not be dismissed.

SERGENIAN LAW
a Professional Corporation

**C.      The Contract Claims Are Properly Asserted Against the Signatories to Each Agreement**

Only a party to a contract may be held liable for its breach, absent a basis to disregard the corporate form. *Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*, 12 Cal. App. 4th 1354, 1359 (1993). The Complaint identifies the signatories to each agreement: the Bonus Agreement was entered by Wang and Fred Jin (Compl. ¶ 206); the Term Sheet by Wang, Jin, Cerebellum, and Interdata (*id.* ¶ 216); and the Stock Repurchase Agreement by Wang, Jin, and Cerebellum (*id.* ¶ 226). The Seventh, Eighth, and Ninth Causes of Action state claims against those signatories, and Wang does not contend that the non-signatory Defendants (Xin Jin, Maren Schwarzer, Martijn Broersma, Brad Bao, Francois Granade, BNW Network GmbH, and CEF AI Inc.) are liable for breach of agreements they did not sign. To the extent the caption designates these counts "Against All Defendants," Wang will conform the pleading to name only each agreement's signatories as to Counts Seven, Eight, and Nine, mooting defendants' contention that the non-signatory Defendants cannot be reached absent alter-ego allegations. Wang does not invoke an alter-ego theory to hold any non-signatory liable on the contract counts, and the conforming amendment removes any occasion to address it.

**D.      The Fiduciary Duty Claim Is Direct Because It Rests on Disloyalty Targeted at Wang Individually, Not on Harm Shared by All Stockholders**

Because Cerebellum is a Delaware corporation (Compl. ¶ 31), the internal affairs doctrine under Delaware law governs whether the fiduciary-duty claim is direct or derivative. The inquiry turns "solely on the following questions: (1) who suffered the alleged harm … and (2) who would receive the benefit of any recovery or other remedy[.]" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). A claim is direct where the duty ran to the stockholder and he can prevail without showing injury to the corporation. *Id.* at 1039.

Jin's duty to Wang arose not from any generalized "co-founder" status but from Jin's position as Cerebellum's sole director and sole officer who exercised complete and unchecked control over the corporation's governance, operations, and finances and held exclusive access to the information material to Wang's holdings. Compl. ¶¶ 13, 51, 236. Accordingly, Jin was a fiduciary who, exercising that control, owed duties of loyalty he could not discharge by singling out a minority stockholder for harm. Wang's

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

claim is direct because it rests on disloyalty Jin aimed at Wang individually, producing injuries Wang alone suffered rather than harm shared pro rata by every shareholder. Jin used his control to repudiate Wang's recognized 18.8% ownership and refuse to recognize his shareholder rights despite written agreements confirming that interest (*id.* ¶ 237), and to engineer, through a deliberately defective smart contract, the permanent destruction of Wang's own token allocation (*id.* ¶¶ 80–81). This conduct was directed at Wang, not at shareholders generally. The Complaint pleads these breaches as "directed at Wang individually, not at the corporation or its shareholders generally," producing injuries "distinct from any injury to Cerebellum." *Id.* ¶ 238. Any recovery would flow to Wang alone.

This is a direct claim under *Tooley*. Federal Rule of Civil Procedure 23.1, which governs only derivative claims, does not apply to them. Fed. R. Civ. P. 23.1(a). Rule 23.1's verification and demand-futility requirements only apply to derivative claims; they are not required for a stockholder suing in his own right for an injury he alone suffered. Fed. R. Civ. P. 23.1(b)(3). Because Wang's direct claim seeks redress for harm to Wang, not to Cerebellum, demand-futility allegations are not required.

Nor does Wang's pursuit of Cerebellum's separate, corporate injury in the Delaware derivative action concede that his individual injury is derivative. A controlling stockholder's targeted disloyalty can inflict both a corporate injury, vindicated derivatively, and a distinct individual injury, vindicated directly; pleading a derivative claim in Delaware does not extinguish the direct claim in this Court. The question under *Tooley* is the nature of each injury, not the forum in which a different injury is pursued. The separate, corporate harm (the looting-driven diminution in the value of Cerebellum's assets, which reduced every stockholder's interest ratably) is derivative, and Wang does not assert it as a direct claim here. He pursues that injury in the Delaware derivative action. The pendency of that derivative action does not convert Wang's individually targeted injuries into corporate ones.

Nor is the fiduciary duty claim duplicative of Wang's contract counts. A fiduciary claim should be dismissed as duplicative only where it is entirely coextensive with a contract claim and rests on no duty beyond the agreement's terms. *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). Wang's claim rests on a duty the contracts did not create: a controlling stockholder's duty of loyalty forbids wielding corporate and technical control to single out a minority holder for destruction, and that duty would bind

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

Jin even if no contract existed. The Tenth Cause of Action should not be dismissed insofar as it rests on the injuries Wang suffered individually.

### E.   The Conversion Claim States a Claim as to Wang's Token Allocation

Conversion requires Wang's ownership or right to possession of property, defendants' wrongful exercise of dominion over it, and damages. *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). The claim is well pleaded as to Wang's $CERE token allocation. Intangible property is subject to conversion in California, which has rejected the rule confining the tort to property merged in a document. *Kremen v. Cohen*, 337 F.3d 1024, 1030–31 (9th Cir. 2003). Wang was allocated approximately 861 million $CERE tokens as co-founder compensation (Compl. ¶ 77), and those tokens were fully vested by January 2021: Wang and Jin confirmed in a January 6, 2021 writing that "'[a]ll of Kenzi and Fred's tokens are fully vested[.]'" *Id.* ¶ 46. A vested allocation is present property, not a promise of future compensation; once the tokens vested they were Wang's, and the only question is dominion over property already his. Jin exercised wrongful dominion over that specific, identifiable property by furnishing a deliberately defective smart contract that locked the tokens so that Wang can neither access, transfer, nor realize value from them. *Id.* ¶¶ 80–81. That is not a failure to deliver promised compensation but an affirmative act depriving Wang of property already his: the locking mechanism presupposes the allocation belonged to Wang. Wang demanded return and was refused. *Id.* ¶¶ 80, 189–190.

### F.   The Section 496 Claim States a Claim for Theft of Wang's Tokens

California Penal Code § 496(c) provides for a treble damages and attorney's fee if a civil plaintiff establishes a violation of Section 496(a), and that remedy reaches property obtained by theft, including theft by false pretense, where the defendant acted with criminal intent. *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361–62 (2022); *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048–49 (2013). Wang's token allocation was fully vested no later than January 2021 (Compl. ¶¶ 46, 77), so it was Wang's own property, and Jin's provision of a deliberately defective smart contract designed to permanently deprive Wang of those approximately 861 million $CERE tokens (*id.* ¶ 81) was the fraudulent appropriation of property already belonging to Wang, not the withholding of unearned compensation. The Complaint alleges this deprivation was undertaken with "specific intent to steal Wang's property" (*id.* ¶ 199) and that defendants knowingly withheld the tokens as property "obtained through theft" (*id.* ¶ 200),

- 7 -

which is the criminal intent the statute requires. This is not an attempt to recast a contract dispute as theft, *cf. Lacagnina v. Comprehend Systems, Inc.*, 25 Cal. App. 5th 955, 969–70 (2018) (holding that unpaid labor is not "property" that can be stolen under section 496, so a claim for withheld compensation is not civil theft); it is a discrete allegation that Jin used a fraudulent instrument to take Wang's identifiable, vested token property.

### G.   The Common Law Fraud Claim Is Pleaded with Particularity (Count Three)

Defendants argue Count Three fails Rule 9(b). Dkt. No. 18 § IV.E.1. Rule 9(b) requires the who, what, when, where, and how of the misrepresentation; it does not require evidentiary detail at the pleading stage. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Complaint supplies that detail for the core misrepresentations. The April 2021 "Cere Network Tokenomics" document, published by Jin and Broersma, represented that insider tokens were "locked" and subject to vesting (Compl. ¶¶ 55–56), when Jin had already resolved to dump them (*id.* ¶ 59), which is a dated, written, attributed statement and the Complaint alleges the reason it was false. The Complaint further pleads affirmative misrepresentations about partnership, use of funds, business operations, and Wang's compensation, made to induce Wang's continued contribution and forbearance (*id.* ¶¶ 165–169). Each is attributed to identified speakers and tied to Wang's reliance. Where particular representations are jointly attributed, the Complaint names the speakers (*id.* ¶¶ 55–56, 87), which is what Rule 9(b) requires; it does not demand artificial division of co-authored statements. *See* § II.M below. To the extent any subsidiary representation lacks comparable specificity, the defect is curable and leave to amend should be granted. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003).

### H.   The Malicious Prosecution Claim (Count Twelve) Pleads a Favorable Termination on the Merits, and the Pendency of an Appeal Presents a Factual Question That Cannot Be Resolved Against Wang on the Pleadings

Defendants argue that Count Twelve fails because the February 26, 2026 Dubai acquittal is not a final favorable termination given the Public Prosecution's appeal, and because the Complaint shows probable cause on its face. Dkt. No. 18 § IV.E.5; Dkt. No. 19 § IV.F. Neither defeats the claim at the pleading stage.

SERGENIAN LAW
a Professional Corporation

Wang pleaded a favorable termination on the merits. Malicious prosecution requires a prior action pursued to a legal termination in the plaintiff's favor, brought without probable cause, and initiated with malice. *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 50 (1974). A termination is favorable when its disposition reflects the merits and the innocence of the accused. *Lackner v. LaCroix*, 25 Cal. 3d 747, 751 (1979); *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 341–42 (2004). The Complaint pleads exactly that: in Dubai Criminal Case No. 33359/2025, the court acquitted Wang of all charges on the merits on February 26, 2026, dismissed the complainants' ancillary civil claim, and ordered the complainants to bear costs and advocate's fees. Compl. ¶¶ 133, 247. The acquittal rested on the Dubai court's findings that the charges were surrounded by substantial doubt, that no financial records, client complaints, or other credible evidence supported the accusations, and that the complainants' own expert report was not credible. *Id.* ¶¶ 133, 248. An acquittal on the merits is the paradigmatic favorable termination.

Whether the Public Prosecution's appeal defeats finality cannot be resolved against Wang on this record. Defendants invoke the rule that a malicious-prosecution action will not lie while an appeal in the underlying action remains pending. *Friedman v. Stadum*, 171 Cal. App. 3d 775, 778–79 (1985). But *Friedman* arose on a fully developed record in which the pendency of the underlying appeal was undisputed; the court there knew the appeal was live because it had taken judicial notice of the very appellate proceedings, which were before the same District. *Id.* at 777 n.1, 778. Here, the asserted appeal is not alleged in the Complaint. Defendants supply it only through their Request for Judicial Notice and a declaration of opposing counsel made on information and belief from foreign counsel. Request for Judicial Notice ("RJN") Ex. D [Dkt. No. 20-5]; Vatrenko Decl. [Dkt. No. 20-1] ¶ 6. On a Rule 12(b)(6) motion, the Court may notice the existence and filing of those documents, but not the truth of the matter for which defendants offer them; i.e., that the appeal remains pending and the acquittal is therefore non-final. Defendants' own exhibits establish only that an appeal was filed and a hearing was set for April 8, 2026; their motion, filed May 25, 2026, supplies no disposition and nothing showing the acquittal has been disturbed. Whether the Dubai acquittal remains subject to a live appeal, and whether any such appeal deprives the acquittal of the finality favorable termination requires, are factual questions that cannot be resolved against Wang on the pleadings.

SERGENIAN LAW
a Professional Corporation

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

The *Friedman* rule is also not self-evidently transferable to this setting. *Friedman* and the authorities it followed addressed appeals in civil actions, where the appellant is the disappointed civil litigant who will become the malicious-prosecution defendant, and where reversal would reinstate that party's own claim. *Friedman*, 171 Cal. App. 3d at 778–79 (relying on annotation addressed to "Pending Appeal in Civil Actions"). Here, the underlying proceeding was a criminal prosecution that terminated in an acquittal on the merits, and the appellant is the Public Prosecution, not defendants. Defendants assert, without citing any authority, that a prosecution's appeal in Dubai of a merits acquittal—which could not arise in the United States, where the prohibition against double jeopardy bars such an appeal—should be treated the same as a civil appellant's challenge for favorable-termination purposes. That argument is unsupported and, in any event, presents a question that cannot be resolved against Wang on the pleadings.

If the Court concludes the favorable-termination element is inadequately pleaded, leave to amend should be granted. Defendants caused two separate criminal prosecutions to be initiated against Wang. In a separate Dubai criminal proceeding, Case No. 31801/2025, the court acquitted Wang of all charges on April 21, 2026, dismissed the complainants' civil claim, and again ordered the complainants to bear costs. That acquittal post-dated Wang's April 10, 2026 Complaint, is not pleaded in it, and no appeal of it appears in any materials defendants have submitted. Accordingly, in the alternative, Wang should be granted leave to amend to plead the Case No. 31801/2025 acquittal as an additional or alternative favorable termination, and to replead the Case No. 33359/2025 acquittal as final should its appeal be resolved in Wang's favor. Leave to amend is to be freely given when justice so requires, and amendment that cures a deficiency by pleading a final favorable termination is not futile. Fed. R. Civ. P. 15(a)(2); *Eminence Capital*, 316 F.3d at 1052.

The Complaint independently negates probable cause. Defendants contend that the Dubai court's trial-stage findings of evidentiary weakness say nothing about what the complainants reasonably believed when they initiated the prosecution. Dkt. No. 18 § IV.E.5. But the Complaint does not rest probable cause on the acquittal alone. It alleges that defendants caused Interdata and Cerebellum to file the criminal complaint, retained counsel to prosecute it, and supplied the expert report and supporting materials knowing the accusations were false when they made them (Compl. ¶¶ 130, 132, 135, 246, 248),

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

SERGENIAN LAW
a Professional Corporation

and that they did so not from any belief in Wang's guilt but to coerce him into abandoning his civil claims. *Id.* ¶¶ 135, 249. The Probable cause inquiry asks whether, on the facts known to the instigator at the time, any reasonable person could have believed the charge tenable. *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 164–65 (1998); *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 878 (1989). A private party who knowingly supplies false information to law enforcement procures the prosecution and is liable notwithstanding the prosecutor's formal charging decision. *Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893, 898 (1983). The prosecutor's decision is not independent where it was induced by the party's knowing falsehoods. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Wang's allegations of knowing falsity at the time of initiation negate probable cause and supply malice. On the pleadings, probable cause cannot be resolved against Wang.

Defendants' final attack on the malicious prosecution claim, that no California court has recognized such a claim arising from a foreign criminal proceeding, is not a basis for dismissal. The tort is defined by its elements: a prior proceeding terminated in the plaintiff's favor, brought without probable cause, and initiated with malice. *Bertero*, 13 Cal. 3d at 50. Nothing in those elements turns on the forum of the underlying proceeding, and defendants identify no authority confining the tort to proceedings before California or United States tribunals; in fact they concede they are aware of none. The comity principle they invoke is misplaced. Wang does not ask this Court to review or disturb any act of the Dubai courts; he embraces the acquittal. He seeks to hold private parties liable for procuring a baseless prosecution through information they knew to be false, which California law makes actionable regardless of where the procured proceeding was filed. *Awabdy*, 368 F.3d at 1067; *Williams*, 147 Cal. App. 3d at 898.

## I. The Economic Loss Rule Does Not Apply to the Seven Claims Jin Invokes It Against

Jin alone invokes the economic loss rule (Dkt. No. 19 §IV.B), against Counts One, Two, Three, Five, Six, Ten, and Eleven, on the theory that Paragraph 154 admits Wang's tort damages are coextensive with his contract damages. The argument misreads both the doctrine and the pleading.

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

### 1. The Rule Bars Only Negligently Inflicted Economic Loss; It Does Not Reach Intentional Torts

California's economic loss rule requires a contracting party to recover in contract for "purely economic loss due to disappointed expectations," absent harm beyond a broken contractual promise. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Its function is to "prevent the law of contract and the law of tort from dissolving one into the other." *Id.* (quotation marks, punctuation, and citation omitted). The controlling authority Jin himself cites marks a limit: the rule "does not apply to limit recovery for intentional tort claims like fraud" and "only applies to bar tort recovery for negligently inflicted economic loss[]…." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024). Each count Jin targets sounds in intentional wrongdoing (fraud, conversion, statutory theft, breach of the duty of loyalty) or arises outside California tort law altogether (the federal RICO counts and the quasi-contractual unjust-enrichment count). The rule reaches none of them.

### 2. Paragraph 154 Pleads a RICO Injury; It Concedes Nothing About the Other Counts

Paragraph 154 alleges Wang's RICO injury and lists categories of harm. It does not allege those are Wang's only injuries, and it cannot erase the distinct, non-contractual harms pleaded elsewhere: the permanent sequestration of Wang's vested tokens (Compl. ¶ 81) and the harms underlying the malicious prosecution and false imprisonment counts, which no contract addresses. The fact that tort and contract damages may overlap in amount is immaterial. The inquiry is whether the defendant breached a duty independent of the contract and inflicted injury the contract did not contemplate, not whether the damages figures coincide. *Rattagan*, 17 Cal. 5th at 38; *Robinson*, 34 Cal. 4th at 989–90. A single course of conduct can breach a contract and commit an independent tort, yielding overlapping damages; the overlap does not collapse the tort into the contract.

### 3. The Rule Does Not Govern Wang's Federal RICO Claims (Counts One and Two)

The economic loss rule is a doctrine of California tort law that determines when a state law tort duty exists. It does not constrict a federal cause of action whose injury element Congress defined.

SERGENIAN LAW
a Professional Corporation

Whether Wang pleads a cognizable injury to "business or property" under 18 U.S.C. § 1964(c) is a question of federal law, and Jin cites no authority applying California's economic loss rule to a federal RICO claim.

### 4.   Breach of Fiduciary Duty Rests on a Duty Imposed by Law (Count Ten)

"[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999). A controlling fiduciary's duty of loyalty is such a duty. It is imposed by law on Jin by virtue of his position as Cerebellum's sole director, sole officer, and sole controller of corporate information (Compl. ¶¶ 13, 51, 236), and it would bind him whether or not the parties had ever contracted. The economic loss rule accordingly does not apply to Count Ten.

### 5.   Wang's Tokens Are His Own Property, Not the Subject of any Contract (Counts Five and Six)

Counts Five and Six allege the conversion and statutory theft of Wang's approximately 861 million $CERE tokens. That grant of tokens, which was compensation for Wang's role as co-founder (Compl. ¶ 77), vested in January 2021 (*id.* ¶ 46), and Jin permanently sequestered it through a deliberately defective smart contract. *Id.* ¶ 81. The tokens are specific, identifiable property, not a sum of money owed. *Voris* is therefore inapposite: it bars conversion of a mere debt, not the taking of property already belonging to the plaintiff. *Voris v. Lampert*, 7 Cal. 5th 1141, 1151–52 (2019). Because no contract governs the tokens, the conversion and theft claims cannot be duplicating a contract remedy that does not exist. Section 496, in turn, is a statutory remedy the Legislature created, not a common law tort governed by the economic loss rule. *See* §§ II.E–F above.

### 6.   Affirmative Fraud Independent of the Breach is Not Barred (Count Three)

*Robinson* holds that the economic loss rule "does not bar" a plaintiff's "fraud and intentional misrepresentation claims" where they are "independent of" the "breach of contract." 34 Cal. 4th at 991. Wang pleads affirmative misrepresentations about partnership, token lockups, use of funds, business operations, and his compensation (Compl. ¶¶ 165–169), made to induce his continued contribution and forbearance and relied upon to his detriment. Those are deceptive acts distinct from any nonperformance, not a breach relabeled. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638–39 (1996). Jin's reliance on

- 13 -

*Rattagan* is misplaced. *Rattagan* holds that a court does not inquire into a breaching party's motive, and that this rule "'applies even when the breach is accomplished in a fraudulent manner.'" *Rattagan*, 17 Cal. 5th at 35 (quoting *Robinson*, 34 Cal. 4th at 995). That rule stops a plaintiff from dressing an ordinary breach as a tort by invoking bad motive. It has no application to a fraud claim that is independently actionable.

### 7.     Unjust Enrichment Is a Quasi-Contract Claim, Not a Tort (Count Eleven)

The economic loss rule limits recovery in tort, and unjust enrichment is not a tort. It is a quasi-contract principle synonymous with restitution. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). Wang pleads it in the alternative to his contract claims, as the law permits. Count Eleven is a restitution claim, not a tort, so the economic loss rule does not reach it. Jin's separate argument that an enforceable express contract forecloses the alternative claim is addressed in § II.P below.

### 8.     A Defendant Who Owes No Contract Duty Cannot Invoke the Economic Loss Rule

The economic loss rule confines a plaintiff to his contract remedy; it therefore presupposes that the law supplies a contract remedy. *Robinson*, 34 Cal. 4th at 988. Wang's position is that Jin is personally bound on the Term Sheet and the Stock Repurchase Agreement, both of which Jin signed in his individual capacity, and Counts Eight and Nine are addressed in § II.K below. But Jin cannot invoke the rule on a premise he himself rejects. To the extent Jin contends, as he does, that he undertook no relevant contractual obligation because the salary, equity, and buyback duties run to the Company rather than to him (Dkt. No. 19 § IV.C), then Wang would not have a contract remedy and the economic loss rule cannot relegate Wang to a contract claim he does not have. Under Jin's own logic, applying the economic loss rule would not hold Wang to any bargain; it would immunize the individual who orchestrated the scheme from the only claims Wang has against him.

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

**J.      Rule 13(a) Is Not a Basis for Dismissal, and the Term Sheet's Forum Clause Forecloses Defendants' Duplication Argument**

Defendants argue that Wang's claims are compulsory counterclaims belonging in the 3798 Action and that this suit duplicates it. Dkt. No. 18 § IV.F; Dkt. No. 19 § IV.G. Neither Rule 13(a) nor the first-filed rule supports dismissal.

Rule 13(a) defines compulsory counterclaims; it does not authorize dismissal of a separately filed action. The sanction for failing to assert a compulsory counterclaim is preclusion in a later action, not dismissal of claims a party has affirmatively brought. The obligation attaches only when a party serves its responsive pleading. Fed. R. Civ. P. 13(a)(1). Wang has not answered in the 3798 Action—a motion to dismiss the operative complaint is pending—so no compulsory-counterclaim obligation has arisen, and nothing has been waived. Defendants' own prayer, seeking dismissal "without prejudice to refiling" the claims as counterclaims in the 3798 Action, concedes the claims are not extinguished, which cannot be squared with their argument that dismissal is required under Rule 13(a).

Counts Twelve and Thirteen could not have been compulsory counterclaims in any event. Rule 13(a) reaches only a claim the pleader has "at the time of its service," so a claim that has not yet accrued cannot be compulsory. Fed. R. Civ. P. 13(a)(1). Wang's malicious prosecution claim did not accrue until his Dubai acquittal on February 26, 2026, long after the 3798 Action was filed, so it was not a claim Wang could have asserted there.

The first-filed rule does not militate in favor of dismissal. The rule is discretionary and exists to promote efficiency; even where it applies, dismissal is disfavored, and a stay or transfer is the norm. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625, 628–29 (9th Cir. 1991). The rule is also properly applicable where there are more than one districts involved; where, as here, both actions are pending in the same district, duplication is addressed by relating the cases under Civil Local Rule 3-12 and, if warranted, consolidating them under Federal Rule of Civil Procedure 42(a), not by dismissing one. The two actions are not mirror images in any event: Wang's federal RICO and securities claims are not asserted in the 3798 Action.

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

**K.      Jin Is a Party to the Term Sheet and the SRA in His Individual Capacity and Cannot Escape Counts Eight and Nine on the Pleadings**

Jin contends he cannot be liable on Counts Eight and Nine because the salary, equity, and buy-back obligations run to "the Company." Dkt. No. 19 § IV.C. The argument fails at the threshold and cannot be resolved against Wang on a Rule 12(b)(6) motion.

Jin signed both agreements in his individual capacity and is a party. Jin's own authority states the rule: officers "are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970). Jin purported to bind himself individually. He executed the Term Sheet three times—as Cerebellum's CEO, as the Foundation's representative, and in his individual capacity—and signed the SRA likewise in his individual capacity. Term Sheet [Dkt. No. 1-1] at 6; Stock Repurchase Agreement [Dkt. No. 1-2]. Jin concedes he "is, on its face, a Party" to the Term Sheet. Dkt. No. 19 at 3. Accordingly, this concession defeats his argument that he cannot be held liable on the contracts.

The Term Sheet imposes personal obligations on Jin, defeating dismissal of Count Eight as to him. Jin is a defined "Party" (Term Sheet, Dkt. No. 1-1, preamble) and is bound individually under the agreement's Binding Effect clause. *Id.* § 10. The instrument assigns obligations to Jin personally in the same provisions Jin asserts are purely corporate: Section 5 provides that "Jin will send $200,000" for Hu's benefit and "Jin will grant 1% equity for Frank Hu," while the salary and equity promises in §§ 4(6) and 5 state "the Company shall." Section 8 likewise binds Jin personally: he agreed, in his individual capacity, that the "losing Party will cover the prevailing Party's reasonable fees and costs." The drafters thus knew how to distinguish Jin's personal undertakings from the Company's, and did so within the same sections, thus confirming Jin assumed personal obligations and defeating his categorical contention that he undertook none. Whether the particular salary and equity provisions Wang invokes are Jin's or the Company's is a question of interpretation under an agreement Jin signed in three capacities, not a matter resolvable against Wang on a Rule 12(b)(6) motion.

Wang's claims against Jin do not rest on the salary and equity provisions alone. Wang alleges that Jin personally, not the Company, provided a deliberately defective smart contract that permanently

- 16 -

locked Wang's token allocation (Compl. ¶¶ 80–81), conduct pleaded as Jin's individual act of fraud and conversion. That personal conduct is the subject of Counts Three, Five, Six, and Ten, and is addressed in §§ II.G, II.E, II.F, and II.D of this brief. Jin's effort to recast himself as a stranger to every operative obligation cannot be squared with allegations that he personally engineered the instrument that deprived Wang of his property.

Jin's premise also defeats his economic loss rule argument. If Jin is correct that he undertook no relevant contractual obligation, then there is no contract between Wang and Jin for Wang's tort claims to duplicate, and the economic loss rule cannot channel those claims into a contract Jin says does not bind him. *See* § II.I.8 above.

### L.   The Securities Claim (Count Four) Should Not Be Dismissed

Defendants attack Count Four on four grounds (Dkt. 18 § B). None warrants dismissal with prejudice; any pleading defect is curable, and leave to amend should be granted.

### 1.   Wang Has Purchaser-Seller Standing, or the Issue Cannot Be Resolved on the Pleadings

*Blue Chip*'s standing rule reaches "actual purchasers and sellers." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975). Wang acquired his $CERE token allocation in exchange for his services as co-founder (Compl. ¶¶ 77, 182), giving value for a securities entitlement rather than standing as an offeree who never transacted. Whether that exchange constitutes a "purchase or sale," and whether Wang's token receipt was a completed acquisition, turns on the nature and terms of the transaction, which are factual questions not resolvable against Wang on a motion to dismiss. *Blue Chip*'s policy concern was a vexatious suit by a plaintiff with no actual securities transaction to anchor it; Wang, who pleads a bargained-for securities entitlement central to the alleged fraud, does not raise that concern.

### 2.   The Limitations Defense Cannot Be Resolved on the Pleadings

The two-year period runs from discovery of "the facts constituting the violation," including scienter, not from inquiry notice. *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (quoting 28 U.S.C. § 1658(b)). The Complaint does not conclusively establish when Wang discovered the facts showing that the lockup representations were knowingly false when made, as distinct from when he learned that

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

token transfers had occurred. Because that date is not fixed on the face of the pleading, limitations is not a basis for dismissal at this stage.

### 3. The Lockup Misrepresentation Is Pleaded with Particularity, and Any Remaining Gaps Are Curable

The PSLRA requires the who, what, when, where, and how of the misstatement. The Complaint supplies exactly that for the core misrepresentation: the April 2021 "Cere Network Tokenomics" document, published by Jin and Broersma, represented that insider tokens were "locked" and subject to vesting (Compl. ¶¶ 55–56), when Jin had already planned to dump them immediately after the ICO (*id.* ¶ 59). That is a dated, written, attributed statement, the reason it was false, and the speakers, which is sufficiently particular. To the extent the Court requires comparable specificity for the remaining categories of misstatement (Fortune 1000 clients, platform development), that defect is curable and leave to amend should be granted. *Eminence Capital*, 316 F.3d at 1052.

### 4. Loss Causation Is Pleaded or Amendable

Loss causation requires a causal link between the misrepresentation and the loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). The Complaint alleges the mechanism Dura requires: the concealed insider dumping and wash trading inflated and then collapsed the token price, destroying the value of Wang's allocation. Compl. ¶¶ 75–79, 89. To the extent the Court requires more specific allegations of transaction price and decline, that is a curable pleading defect for which leave to amend should be granted. *Eminence Capital*, 316 F.3d at 1052. Dismissal with prejudice is unwarranted.

### M. The RICO Counts Satisfy Rule 9(b) and Plead a Continuing Pattern (Counts One, Two)

Beyond the PSLRA bar addressed in Argument A, defendants argue the RICO counts independently fail Rule 9(b) and fail to plead continuity. Dkt. No. 18 § IV.A.2. Neither argument has merit.

### 1. The Predicate Acts Are Pleaded with Particularity

Rule 9(b) requires the time, place, and content of the fraudulent conduct and each defendant's role. *Swartz*, 476 F.3d at 764–65. The Complaint supplies that detail. The deceptive communications are pleaded with speakers and a date: the April 2021 "Cere Network Tokenomics" document, published by Jin and Broersma, represented that insider tokens were "locked" and subject to vesting (Compl. ¶¶ 55–

- 18 -

SERGENIAN LAW
a Professional Corporation

56), a representation Jin had already resolved to violate (*id.* ¶ 59). The wire transmissions effectuating the scheme are pleaded with dates, amounts, and transaction hashes—the November 8, 2021 transfers of 550 million tokens to HTX and Kucoin (*id.* ¶¶ 64–66)—and the $16.6 million in RegD diversions are pleaded with wallet addresses, dates, and amounts (*id.* ¶¶ 92–93), with proceeds traced to identified laundering wallets (*id.* ¶¶ 70–71). These are specific, verifiable allegations, not the conclusory averments Rule 9(b) forbids. To the extent the more diffuse references to "false statements … via websites and social media" (*id.* ¶ 140) lack comparable specificity, they are additive to the particularized predicates above and nonessential.

### 2.   The Complaint Pleads Continuity

A pattern requires continuity, shown either by related predicates over a substantial period (closed-ended) or by a threat of continued activity (open-ended). *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). The Complaint pleads closed-ended continuity: a related series of predicate acts—the token dump, the RegD diversions, the looting of five additional wallets, the laundering through offshore entities, and the witness intimidation—spanning October 2021 through at least 2023. Compl. ¶¶ 60–105, 139–144. It also pleads open-ended continuity. The Complaint alleges a serial pattern across at least four successive Jin token ventures (50 Cubes, Funler, BitLearn, and Cere) each following the same method of raising investor funds and looting the proceeds. *Id.* ¶¶ 17, 138. Racketeering conducted as the enterprise's "regular way of conducting … [an] ongoing … business" is the hallmark of open-ended continuity. *H.J. Inc.*, 492 U.S. at 242–43. Defendants' routing of proceeds through a standing offshore-entity network (Compl. ¶¶ 71, 141) and their launch of successor ventures including CEF AI funded with misappropriated assets (*id.* ¶¶ 34, 72, 144) confirm the threat that the scheme's methods will continue. Whether continuity exists is, in any event, a fact-intensive inquiry ill-suited to resolution on the pleadings.

### N.   Wang Pleads Cognizable RICO Injury to Business and Property (Counts One, Two)

Jin argues Wang's RICO injuries—reputation, lost opportunities, emotional distress—are not cognizable. Dkt. No. 19 § IV.B. The argument fixes on damages items that are not the gravamen of Wang's claim.

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

Section 1964(c) requires injury to "business or property," and personal injuries are not recoverable. *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc), abrogated on other grounds by *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc). Wang's RICO injury is concrete property injury: the permanent loss of his approximately 861 million vested $CERE tokens, sequestered through the deliberately defective smart contract. Compl. ¶ 81. That injury is independent of the equity-diminution and securities-related losses defendants attack elsewhere. It is the loss of identifiable personal property Wang already owned (*id.* ¶¶ 46, 77), accomplished by a discrete act of the enterprise pleaded as a predicate wire fraud (*id.* ¶ 81), not a diminution in the value of a corporate holding and not a securities-transaction loss. The harm to reputation, lost opportunity, and emotional distress Wang alleges (*id.* ¶ 154) are not the foundation of his standing; their presence does not defeat a claim independently anchored in the loss of the tokens. If the Court finds any single damages item non-cognizable, the remedy is to disregard that item, not to dismiss counts that plead concrete property injury. The token sequestration is not pleaded in isolation: it is one predicate within the larger pattern of dumping, laundering, and concealment that destroyed the token's value (*id.* ¶¶ 60–105, 139–144), and Section 1964(c) requires only that Wang's injury flow from the pattern of racketeering, not from any single act.

O.      **The Complaint Does Not Engage in Impermissible Group Pleading (Counts Three, Four, and the RICO Counts)**

Defendants contend the Complaint lumps "Defendants" together in violation of Rule 9(b) and the PSLRA. Dkt. No. 18 § IV.A.2, § IV.E.1; Dkt. No. 19 § IV.E. The Complaint instead assigns specific conduct to each defendant.

Rule 9(b) requires, at a minimum, that the complaint identify the role of each defendant in the alleged fraudulent scheme. *Swartz*, 476 F.3d at 765. For the fraud itself, it requires the who, what, when, where, and how of the misrepresentation. *Vess*, 317 F.3d at 1106. The Complaint differentiates: the lockup misrepresentations are attributed to Jin and Broersma in a dated, written publication (Compl. ¶¶ 55–56); the promotional falsehoods about imminent mainnet launch and Fortune 500 adoption are attributed to Broersma and Bao (*id.* ¶ 87); Jin alone is tied to the transfers, diversions, and the defective smart contract (*id.* ¶¶ 64–66, 91, 92–93); Xin Jin to key generation and the sign-off on the $16.6 million and $41.78 million transfers (*id.* ¶ 14); and Schwarzer to BNW's receipt and laundering of proceeds (*id.*

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

¶¶ 15, 71). Identifying the specific speakers of a jointly authored statement is what Rule 9(b) requires; the rule does not demand that co-authored representations be artificially divided. To the extent defendants contend particular securities-fraud statements still lack the date or medium the PSLRA demands as to Count Four specifically, that is the curability question addressed in § II.L above, not a basis to dismiss the role-differentiated fraud and RICO allegations.

### P.    Unjust Enrichment (Count Eleven) Is Properly Pleaded in the Alternative

Defendants argue that Count Eleven is barred because express contracts govern the same subject matter. Dkt. No. 18 § IV.E.4. The argument is premature at the pleading stage.

A plaintiff may plead unjust enrichment in the alternative, and a quasi-contract claim is properly maintained alongside a contract claim where the existence, enforceability, or scope of the governing contract is disputed. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); Fed. R. Civ. P. 8(d)(2)–(3). That is precisely this case. Defendants dispute that Wang holds the equity and compensation he sues on, contend that most defendants are not parties to the agreements, and argue that Jin undertook no relevant contractual obligation. Dkt. No. 18 § IV.C; Dkt. No. 19 § IV.C. Wang is entitled to plead unjust enrichment against the defendants and as to the benefits not governed by an enforceable contract between the parties, including the value of the services, reputation, and investor relationships he conferred (Compl. ¶¶ 241–242) and the token allocation no written agreement addresses. Defendants cannot simultaneously deny the contracts bind them and invoke those same contracts to bar Wang's alternative quasi-contract theory. Dismissal of the alternative claim now, before the contracts' enforceability and scope are adjudicated, is improper.

### Q.    The Declaratory Relief Claim (Count Fourteen) Serves a Useful Purpose

Defendants argue Count Fourteen is duplicative and advisory. Dkt. No. 18 § IV.E.7. It is neither.

The Declaratory Judgment Act authorizes a declaration of rights where an actual controversy exists, and a claim serves a useful purpose where it settles legal relations the damages claims do not fully resolve. The Complaint pleads a live, concrete dispute over Wang's present ownership of 18.8% of Cerebellum, the validity of his purported termination, and his attendant shareholder rights. Compl. ¶¶ 260–264. That forward-looking dispute over status is not redundant of Wang's backward-looking

SERGENIAN LAW
a Professional Corporation

damages claims: a damages award for breach does not declare whether Wang remains an 18.8% shareholder entitled to ongoing shareholder rights and information. Defendants' contention that the declaration duplicates the 3798 Action also fails for the reasons stated in § II.J above—the 3798 Action does not adjudicate Wang's affirmative claims, and defendants themselves insist the Term Sheet's § 8 designates this forum. To the extent any overlap exists, the remedy is to manage it through the procedures discussed in § II.J above, not to dismiss a claim that resolves Wang's ongoing status.

### R.    The False Imprisonment Claim (Count Thirteen) States a Claim

Defendants raise three defects with the false imprisonment claim. Dkt. No. 18 § IV.E.6. None defeats the claim, which rests on two distinct periods of confinement.

#### 1.    The Detention and Travel Ban Are Actionable Confinement

False imprisonment requires nonconsensual restraint for an appreciable time; it does not require physical lockup and may be effected by compulsion to remain within a defined area. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994); *Scofield v. Critical Air Medicine, Inc.*, 45 Cal. App. 4th 990, 1001 (1996). Wang pleads both arrest and detention in Dubai (Compl. ¶ 136) and a travel ban that has confined him to the UAE for over a year (*id.* ¶ 255). Defendants' premise that the travel ban is the only confinement Wang pleads ignores Paragraph 136, which alleges that the Dubai criminal complaint "resulted in Wang's arrest and detention in a foreign jurisdiction." Custodial detention and a prolonged travel ban are each independently sufficient; defendants' decision to engage only the ban does not narrow the pleading. A restraint of that duration is confinement for an appreciable time.

#### 2.    During the Pendency of the Charges, Defendants Procured the Confinement Through Knowingly False Information

One who procures a confinement by knowingly supplying false information is liable, and the intermediary's judgment does not insulate the instigator where it was induced by the defendant's falsehoods. *Du Lac v. Perma Trans Prods., Inc.*, 103 Cal. App. 3d 937, 941–42 (1980)[1]; Rest. (2d) Torts

---

[1] *Hagberg v. California Federal Bank*, 32 Cal. 4th 350 (2004), held that Civil Code section 47(b) bars tort claims premised on a citizen's report of suspected crime to law enforcement. The California Legislature has since withdrawn the privilege from such reports made with knowledge of their falsity or reckless disregard for the truth. Cal. Civ. Code § 47(b)(5). The Complaint alleges precisely such a knowingly false report. Compl. ¶ 253. One who knowingly furnishes false information to bring about another's

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

§ 45A. Defendants supplied the Dubai Public Prosecution a complaint and expert report the court found wholly devoid of credible evidentiary support. Compl. ¶¶ 132, 248, 253. On those allegations, the detention and the ban were procured by defendants' falsehoods, not by an independent foreign judgment. *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757–60 (1997), is not to the contrary: it addresses a defendant's liability where process issues on accurate information, not where, as alleged here, the confinement was procured by knowingly false reports.

### 3. The Continuing Post-Acquittal Ban Underscores that the Restraint Never Rested on Lawful Process

That the ban persists after Wang's February 26, 2026 acquittal (Compl. ¶ 255) does not break causation; it confirms that the restraint defendants set in motion was never supported by any valid charge. A confinement that outlives the dismissal of the charges that produced it is the continuing consequence of the original wrongful procurement, not an independent sovereign act severable from it.

### 4. The Act-of-State Doctrine Does Not Bar the Claim

The act-of-state doctrine forbids a United States court from declaring invalid the official act of a foreign sovereign; it does not bar adjudicating the tortious conduct of private parties, even where that conduct induced a sovereign act. *W.S. Kirkpatrick & Co. v. Env'l Tectonics Corp.*, 493 U.S. 400, 409–10 (1990). Wang does not ask this Court to invalidate any UAE act; he seeks damages from private defendants for furnishing knowingly false information that foreseeably caused his confinement. That inquiry leaves every sovereign act intact. *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1067 (9th Cir. 2018), which addressed a challenge to the validity of the sovereign act itself, is inapposite.

## III. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety. To the extent the Court finds any cause of action inadequately pleaded, Wang respectfully requests leave to amend.

---

confinement is liable notwithstanding that law enforcement carried it out. *Du Lac*, 103 Cal. App. 3d at 941–42.

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT

June 8, 2026

**SERGENIAN LAW**

a Professional Corporation

By:    */s/David A. Sergenian*
       David A. Sergenian

Counsel for Plaintiff KEN WANG

- 24 -

KEN WANG'S OPPOSITION TO MOTIONS TO DISMISS COMPLAINT