HANSON BRIDGETT LLP
MATTHEW F. MILLER, SBN 172661
mmiller@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

VATRENKO LAW P.C.
IEVGENIIA P. VATRENKO (NY Bar No. 4904397) (*pro hac vice*)
jenny@vatrenkolaw.com
2 Park Avenue, Floor 20
New York, New York 10016
Telephone:    (718) 451-6384

Attorneys for Defendants CEREBELLUM NETWORKS INC.
and INTERDATA NETWORK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

KEN WANG, an individual,

      Plaintiff,

      v.

FRED JIN, an individual;
XIN JIN, an individual;
MAREN SCHWARZER, an individual;
MARTIJN BROERSMA, an individual;
BRAD BAO, an individual;
FRANCOIS GRANADE, an individual;
CEREBELLUM NETWORKS, INC., a
Delaware corporation;
INTERDATA NETWORK INC., a British
Virgin
Islands entity;
BNW NETWORK GMBH, a German
entity;
CEF AI INC., a Delaware corporation; and
DOES 1–50, inclusive,

      Defendants.

Case No. 3:26-cv-03111-WHO

**CEREBELLUM DEFENDANTS'
REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT**

Date:  July 15, 2026
Time:  2:00 p.m.

Action Filed:  April 10, 2026
Trial Date:    None Set

Case No. 3:26-cv-03111-WHO

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT..........................................................................................................1

    A.    The PSLRA Bars Counts One and Two. ..................................................1

        1.    The Complaint Pleads the Predicate Acts as a Securities Scheme Aimed at Investors. ........................................................................1

        2.    Wang's Authorities Do Not Support Him, and *Rezner* Cuts Against Him......3

        3.    The RICO Counts Independently Fail Rule 9(b) and Do Not Plead Continuity. ............................................................................5

    B.    Count Four Fails for Lack of Standing, Timeliness, Particularity, and Loss Causation. ..............................................................................6

    C.    Wang's Concession Resolves Counts Seven, Eight, and Nine as to Nonsignatories........................................................................7

    D.    Count Ten Is Derivative, and the Complaint Fails Rule 23.1. .............8

    E.    The Remaining Counts Fail for the Reasons the Motion Stated. .........9

        1.    Count Three (Fraud) Remains Unparticularized. ............................9

        2.    Count Five (Conversion) Is Defeated by Its Own Property Paragraph. ........10

        3.    Count Six (§ 496) Pleads a Commercial Dispute, in Its Own Words............10

        4.    Count Eleven (Unjust Enrichment) Is Foreclosed by the Contracts Wang Affirms. ...........................................................................11

        5.    Count Twelve Fails on Favorable Termination and Probable Cause. ...........11

        6.    Count Thirteen Fails on Confinement, Causation, and the Act-of-State Doctrine. ...........................................................................13

        7.    Count Fourteen Serves No Useful Purpose. .................................13

    F.    At a Minimum, the Surviving Claims Belong in the First-Filed 3798 Action. ...14

III.  CONCLUSION .....................................................................................................15

Case No. 3:26-cv-03111-WHO

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
946 F.2d 622 (9th Cir. 1991) ...................................................................................14

*Asgari v. City of Los Angeles,*
15 Cal. 4th 744 (1997) ............................................................................................13

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ...................................................................................11

*Awabdy v. City of Adelanto,*
368 F.3d 1062 (9th Cir. 2004) .................................................................................12

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723 (1975)...................................................................................................6

*Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.,*
94 Cal. App. 4th 151 (2001) ....................................................................................11

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005).....................................................................................................7

*Feldman v. Cutaia,*
951 A.2d 727 (Del. 2008) ...........................................................................................9

*Friedman v. Stadum,*
171 Cal. App. 3d 775 (1985) ...................................................................................11

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
492 U.S. 229 (1989).....................................................................................................6

*Howard v. Am. Online, Inc.,*
208 F.3d 741 (9th Cir. 2000) .............................................................................2, 4, 5

*Jablon v. Dean Witter & Co.,*
614 F.2d 677 (9th Cir. 1980) .....................................................................................7

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
787 F.3d 1237 (9th Cir. 2015) .................................................................................14

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

*Lacagnina v. Comprehend Sys., Inc.,*
    25 Cal. App. 5th 955 (2018) ...........................................................................................11

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)........................................................................................................15

*Lantz Ret. Invs., LLC v. Glover,*
    No. 19-CV-00379, 2020 WL 528890 (E.D. Cal. Jan. 31, 2020) ..............................3, 4, 5

*Merck & Co. v. Reynolds,*
    559 U.S. 633 (2010)......................................................................................................6, 7

*Rezner v. Bayerische Hypo-Und Vereinsbank AG,*
    630 F.3d 866 (9th Cir. 2010) ............................................................................................3

*Sanville v. Bank of Am. Nat. Tr. & Sav. Ass'n,*
    18 F. App'x 500 (9th Cir. 2001) .......................................................................................3

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
    806 F.2d 1393 (9th Cir. 1986) .........................................................................................3

*Sheldon Appel Co. v. Albert & Oliker,*
    47 Cal. 3d 863 (1989) ....................................................................................................12

*Siry Inv., L.P. v. Farkhondehpour,*
    13 Cal. 5th 333 (2022) ...................................................................................................11

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ........................................................................................5, 9

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) ...........................................................................................8, 9

*Trachsel v. Buchholz,*
    No. C-08-02248-RMW, 2009 WL 86698 (N.D. Cal. Jan. 9, 2009) .................................4

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004) .........................................................................................6

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ......................................................................................5, 9

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

*Voris v. Lampert,*
    7 Cal. 5th 1141 (2019) .........................................................................................................10

*Williams v. Hartford Ins. Co.,*
    147 Cal. App. 3d 893 (1983) ...............................................................................................12


**Statutes**

18 U.S.C. § 1512...........................................................................................................................5

18 U.S.C. § 1964(c) ..................................................................................................................2, 3

Cal. Civ. Code § 47(b)(5) ..........................................................................................................13


**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................5, 10

Fed. R. Civ. P. 13(a)(2)(A) .........................................................................................................14

Fed. R. Civ. P. 13(e) ...................................................................................................................14

Fed. R. Civ. P. 23.1 .......................................................................................................................9

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

Wang's Opposition opens with two concessions that narrow this motion considerably. Wang "will conform the pleading to name only each agreement's signatories as to Counts Seven, Eight, and Nine," and he "does not invoke an alter-ego theory to hold any non-signatory liable on the contract counts." (Dkt. 24, Opp. 5:11-15.) Those concessions resolve Count Seven as to Cerebellum and Interdata, Count Nine as to Interdata, and Counts Seven through Nine as to every individual and entity Defendant who did not sign the agreement sued upon. The dismissals should be with prejudice.

On everything else, the Opposition proceeds by rewriting the Complaint and the case law. It recasts a pleading whose racketeering counts target a scheme "to defraud investors" as a scheme that injured only Wang; recasts a conversion count whose own property paragraph lists unpaid contract sums as a claim for token theft; recasts a fiduciary-duty count grounded in "the co-founder relationship" and "the agreements" as a controlling-stockholder loyalty claim; and reads its lead authorities for more than they hold. Each rewrite is addressed in its place below. Their number is itself telling: one misreading might be advocacy; this many, each resolving in Wang's favor, is a method, and the Court should read the Opposition's mischaracterizations of the record and the case law accordingly.

The Complaint should be dismissed. At a minimum, what survives belongs in the first-filed 3798 Action, a point the Opposition effectively concedes by proposing relation and consolidation rather than disputing the overlap.

## II. ARGUMENT

### A. The PSLRA Bars Counts One and Two.

#### 1. The Complaint Pleads the Predicate Acts as a Securities Scheme Aimed at Investors.

The Opposition's central move is to repackage the RICO counts, predicate by predicate, as "embezzlement and laundering of corporate funds" that "injured Wang directly" and that "no securities purchaser or seller could assert." (Dkt. 24, Opp. 1:15-17.)

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

The Complaint says otherwise. It pleads that the enterprise existed "to defraud investors through the Cere Network scheme" (Dkt. 1, Compl. ¶ 137); that the predicates shared the common purpose of "systematic fraud against cryptocurrency investors" whose victims were "cryptocurrency investors" (*id*. ¶¶ 148, 152); that the acts "were part of the same scheme to create, pump, and dump Cere Tokens" (*id*. ¶ 152); and that the wire fraud consisted of "transmitting false statements about Fortune 500 clients," "sending false offering documents electronically to investors globally," and "false representations in video conferences" (*id*. ¶ 140). Count Four pleads the same tokens as securities and incorporates the same paragraphs. Conduct pleaded as deceiving token purchasers through false offering documents is conduct "actionable as fraud in the purchase or sale of securities," and the PSLRA bars its conversion into RICO. 18 U.S.C. § 1964(c); *Howard v. Am. Online, Inc*., 208 F.3d 741, 749–50 (9th Cir. 2000).

The "embezzlement" predicates fare no better, because the funds at issue are securities-offering proceeds. The RegD Wallet held "approximately $28.3 million from over 5,000 retail investors" (Dkt. 1, Compl. ¶ 91); the diverted funds were "Regulation D and Regulation S funds" (*id*. ¶ 104); and the Complaint alleges that those funds were raised while "Jin represented investor funds would be used for platform development" (*id*. ¶ 167)—a use-of-proceeds misrepresentation to securities purchasers. The Complaint's wallet-by-wallet allegations remove any remaining distance: two of the five "additional corporate cryptocurrency wallets" Wang says Jin looted (*id*. ¶¶ 99–100), the "376 Account" and "cD2 Account," are, by their own addresses, the same "Jin Wallet A" and "Jin Wallet B" the Complaint elsewhere describes as "undisclosed personal wallets controlled exclusively by Jin" into which the Regulation D funds were diverted. (Compare *id*. ¶ 100 with *id*. ¶¶ 92, 94, 104.) The supposedly independent embezzlement predicates are the same offering proceeds, counted twice.

Wang's injury allegations confirm the point. Paragraph 154 pleads the RICO injury as including the loss of his equity stake, unpaid salary, unpaid bonuses, and "loss of expected token allocation," and the Prayer measures the token damages by "the destruction

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

of value" of the allocation (*id.*, Prayer ¶ B), which is the price-diminution theory the Opposition expressly disclaims (Dkt. 24, Opp. 2:10). The only predicate the Opposition describes as aimed at Wang alone—the smart-contract allegation—is pleaded "[u]pon information and belief," in the alternative ("faulty or deliberately defective"), with knowledge alleged as "knew or should have known." (Dkt. 1, Compl. ¶ 81.) A wire-fraud predicate requires "specific intent to deceive or defraud." *Sanville v. Bank of Am. Nat. Tr. & Sav. Ass'n.*, 18 F. App'x 500, 501 (9th Cir. 2001) (citing *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399–1400 (9th Cir.1986)). Wang's allegation sounds in negligence.

### 2. *Wang's Authorities Do Not Support Him, and Rezner Cuts Against Him.*

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866 (9th Cir. 2010) does not carry the weight the Opposition places on it. Its PSLRA holding arose from a fraud whose victim was the United States: a tax-shelter scheme in which the pledged securities were incidental loan collateral. *Id.* at 872. That is what made them "merely a happenstance cog in the scheme." *Id.* Here, by the Complaint's own allegations, the securities are not a cog in the scheme; they are the scheme. *See* § II.A.1 above. And the portion of *Rezner* the Opposition does not discuss defeats the repackaged predicates: the Ninth Circuit reversed summary judgment for the plaintiff because the direct victim of the fraud was the United States, so the plaintiff's own, derivative injuries lacked the "direct relation" RICO requires. *Id.* at 873–74. So too here. Predicates aimed at cryptocurrency investors and at the corporate treasury injure others directly, whereas Wang's claimed injuries—the value of his equity stake and his expected token allocation—are the derivative harms *Rezner* holds insufficient. *Id.*

*Lantz Ret. Invs., LLC v. Glover*, No. 19-CV-00379, 2020 WL 528890 (E.D. Cal. Jan. 31, 2020) did not grant leave to amend "precisely because RICO predicates may reach conduct distinct from the securities transaction." (Dkt. 24, Opp. 4:1-2.) It granted leave while observing that it was "difficult to conceive what allegations might be brought that are not barred by 18 U.S.C. § 1964(c)," and it rejected the same recharacterization Wang

attempts here: the *Lantz* plaintiffs argued that their claims alleged mail fraud, wire fraud, and "money laundering outside the fraudulent sale and purchase of the securities," and the court held those predicates barred because each rested on the conduct underlying the securities claims, and the RICO counts "added only the instrumentalities of communicating the alleged fraud." *Id.* at *8. Wang's variant that the diversion and looting predicates take "a company's own assets" after the funds "reached the corporate treasury" (Dkt. 24, Opp. 3:18-22) fails on the Complaint's own allegations: the diverted funds are Regulation D and Regulation S offering proceeds, raised from token purchasers while Jin allegedly misrepresented how those proceeds would be used. (Dkt. 1, Compl. ¶¶ 91, 104, 167; *see* § II.A.1 above.) Misrepresenting the use of offering proceeds to the investors who supply them is conduct actionable as securities fraud, and laundering those proceeds afterward does not change what they are. Even on Wang's own reading of *Lantz* that the bar only reaches proceeds traceable to a securities sale (Dkt. 24, Opp. 3:11-12), his predicates are barred, because proceeds of the Regulation D and S offerings are exactly what the Complaint pleads these funds to be.

*Trachsel v. Buchholz*, No. C-08-02248-RMW, 2009 WL 86698 (N.D. Cal. Jan. 9, 2009) was not "a single-episode kickback at the moment of purchase." (Dkt. 24, Opp. 3:26-27.) It involved a course of "misleading statements and omissions and kick-backs," and it dismissed the RICO counts because the securities and RICO claims rested on identical allegations: "the allegations on which the RICO claims are based are identical to those on which the securities fraud claim is based." *Trachsel*, 2009 WL 86698, at *4. That is the architecture of Wang's Complaint: Counts One, Two, and Four incorporate the same paragraphs (Dkt. 1, Compl. ¶¶ 145, 156, 176), and the wire-fraud predicates are the offering-document and promotional misrepresentations underlying Count Four. (*Compare id.* ¶ 140, *with id.* ¶ 179.) *Trachsel* also states the rule that disposes of Wang's lead premise: the bar "applies even if the RICO plaintiff herself cannot have asserted the securities fraud claim." *Id*. at *3 (citing *Howard*, 208 F.3d at 749–50). The test is conduct-based, not plaintiff-based; that the predicates are ones "no securities purchaser or seller

could assert" (Dkt. 24, Opp. 1:16-17) is no answer at all. The Opposition never engages *Howard's* holding.

Finally, the Opposition does not defend the witness-tampering predicate on its elements. It repeats that the tampering was "directed at former employees and whistleblowers" (Dkt. 24, Opp. 2:20-21), but identifies no official proceeding, no witness, no testimony, and no corrupt communication, which are the elements 18 U.S.C. § 1512 requires and the Motion showed are missing. (Dkt. 18, Mot. at 6.) The point is conceded.

### 3.   *The RICO Counts Independently Fail Rule 9(b) and Do Not Plead Continuity.*

The Opposition answers the particularity challenge with transaction hashes and wallet addresses. (Dkt. 24, Opp. 19:1-5.) But hashes particularize transfers, not misrepresentations. The fraud predicates remain what they were: "false statements about Fortune 500 clients via websites and social media" with no statement, speaker, date, or audience (Dkt. 1, Compl. ¶ 140), and an April 2021 document attributed jointly to two defendants without any allegation of who authored which representation or what each knew (*id*. ¶¶ 55–56). The Complaint's only effort at differentiation assigns the same act to two people: both Xin Jin and Schwarzer allegedly signed off on the same $16.6 million and $41.78 million transfers, each on information and belief. (*Id*. ¶¶ 14–15.) That is the lumping *Swartz* forbids. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

The scienter allegation supporting those statements is no more particular: the assertion that Jin "had already resolved" to dump the tokens (Dkt. 24, Opp. 19:1) rests entirely on Paragraph 59's conclusory allegation that Jin "planned from the outset," unsupported by any statement, act, or circumstance evidencing the plan contemporaneous with the April 2021 document, only the November 2021 sales themselves, seven months later. (Dkt. 1, Compl. ¶¶ 59, 64–66.) A later transfer does not show that a representation was knowingly false when made; that is fraud by hindsight. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (a plaintiff "must set forth what is false or misleading about a statement, and why it is false"); *Lantz*, 2020 WL 528890, at *8 (complaint must "set forth an explanation as to why the statement or omission complained

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

of was false and misleading;" applying the standard to civil RICO claims sounding in fraud).

On continuity, the Opposition's open-ended theory rests on the allegation that Defendants "have launched new ventures using stolen funds" (Dkt. 1, Compl. ¶ 144), which reduces to a single on-information-and-belief sentence about CEF AI (*id*. ¶ 34) and on a narrative about prior ventures (50 Cubes, Funler, BitLearn) that the Complaint describes as failures, not as predicate acts of racketeering. (*Id*. ¶ 17 (ventures that "failed or [are] now alleged to be fraudulent").) A threat of continued criminal activity cannot be assembled from collapsed startups and conclusory assertions. *H.J. Inc. v. Northwestern Bell Tel. C*o., 492 U.S. 229, 241–43 (1989); *Turner v. Cook*, 362 F.3d 1219, 1229–30 (9th Cir. 2004).

**B. Count Four Fails for Lack of Standing, Timeliness, Particularity, and Loss Causation.**

*Standing*. The Opposition asserts that Wang "acquired his $CERE token allocation in exchange for his services." (Dkt. 24, Opp. 17:16-17.) The Complaint pleads no acquisition. It pleads that Wang "was promised tokens as compensation" (Dkt. 1, Compl. ¶ 182), that he "was entitled to" an allocation that "was promised" (*id*. ¶ 77), and that Defendants "have refused to deliver Wang's full token allocation" (*id*. ¶ 80). A promise of tokens never delivered is neither a purchase nor a sale, and the would-be recipient of an unconsummated transfer is precisely the plaintiff *Blue Chip* excludes. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737–39 (1975). The Opposition's fallback that the nature of the exchange is a "factual question" (Dkt. 24, Opp. 17:19-20) identifies no fact that needs finding: on the pleading, there was no completed transaction in which to find a purchase or sale.

*Timeliness*. *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) does not help Wang, because the Complaint pleads discovery of the facts constituting the violation, including the facts showing knowing falsity, by the spring of 2023: Wang investigated Cerebellum's finances in early 2023, discovered the November 2021 token transfers, confronted Jin in

April 2023, and sent a May 1, 2023 counsel letter accusing Defendants of fraud, conversion, breach of fiduciary duty, and § 496 theft. (Dkt. 1, Compl. ¶¶ 3–8.) A plaintiff whose own pleading alleges that he accused the defendants of fraud in May 2023 cannot maintain that the scienter component remained undiscovered for limitations purposes thereafter. *Merck*, 559 U.S. at 653. Two years from April–May 2023, plus the 105-day tolling period, expired in 2025. Wang sued April 10, 2026. The dates are all on the face of the Complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

*Particularity and loss causation*. The Opposition defends one statement, the April 2021 Tokenomics document (Dkt. 24, Opp. 18:6–8), and argues that the rest are "curable." (*id.* 18:11–12.) The defended statement is jointly attributed and undifferentiated, see § II.A.3 above, and the Jin-specific scienter allegation supporting it (that Jin "had already resolved to dump" tokens, Dkt 1, Compl. ¶ 59) is dateless and factless. As for loss causation, the Opposition cites the pump-and-dump price collapse (*id.* ¶¶ 75–79, 89), but Wang pleads no purchase, no price paid, and no sale; and his allocation was never delivered (*id.* ¶ 80), so there is no transaction to which a *Dura* loss could attach. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 346–47 (2005). The Opposition's argument in support of amendment identifies no new facts—no dates, no transactions, no statements in their actual words. If Wang seeks leave, he should be required to identify the facts he would add.

**C. Wang's Concession Resolves Counts Seven, Eight, and Nine as to Nonsignatories.**

The Opposition agrees that "[o]nly a party to a contract may be held liable for its breach," identifies the signatories of each agreement from the Complaint's own allegations (Dkt. 1, Compl. ¶¶ 206, 216, 226), commits to "conform the pleading to name only each agreement's signatories," and disclaims alter ego. (Dkt. 24, Opp. 5:3–15.) On those concessions: Count Seven must be dismissed as to Cerebellum and Interdata (the Bonus Agreement is pleaded as between Wang and Jin only, Dkt. 1, Compl. ¶ 206); Count Nine must be dismissed as to Interdata (*id.* ¶ 226); and Counts Seven through Nine must be dismissed as to Xin Jin, Schwarzer, Broersma, Bao, Granade, BNW Network GmbH, and

CEF AI Inc.[1] Because Wang has disclaimed the only theory that could ever reach the non-signatories, those dismissals should be with prejudice. A "conforming amendment" is unnecessary; an order is.

### D. Count Ten Is Derivative, and the Complaint Fails Rule 23.1.

The Opposition's theory of directness rests on a premise the Complaint itself contradicts. It argues that Jin's duty arose "not from any generalized 'co-founder' status but from Jin's position as Cerebellum's sole director and sole officer who exercised complete and unchecked control." (Dkt. 24, Opp. 5:24-26.) Paragraph 236 pleads the opposite: the duty allegedly arose from "the co-founder relationship," from Jin's control of information, and from "the agreements between Wang and Jin in which Jin undertook obligations to Wang personally, including the obligation to issue equity, pay compensation, and deliver tokens." (Dkt. 1, Compl. ¶ 236.) The "co-founder relationship" is the theory the Opposition disclaims, and one Delaware law does not recognize. (Dkt. 18, Mot. at 11.) Contract-based performance cannot double as an independent fiduciary duty. And the "sole director . . . unchecked control" premise is contradicted within the same pleading: the Complaint elsewhere alleges that "the board of Cerebellum—including Bao and Granade—authorized or ratified the decision to file the Dubai criminal complaint," describes "intentional torts committed through affirmative board action," and alleges that Bao's board appointment was publicly announced in January 2021. (Dkt. 1, Compl. ¶¶ 135–36, 17.) Wang's verified Delaware pleading likewise alleges demand futility against a three-member board consisting of "Fred, Bao, and Granade." (Dkt. 20-4, Vatrenko Decl. Ex. C ¶ 161.) Wang cannot plead a one-man board for *Tooley* purposes here while pleading, under verification, a three-member board in Delaware.

On the injury itself, the Opposition cannot escape what the Complaint pleads at

---

[1]     Being a party is a necessary condition of contract liability, not a sufficient one: which signatory undertook the particular obligation sued upon is a distinct question. The Term Sheet, for example, assigns the salary and equity obligations to "the Company," and it is addressed as to Mr. Jin in his separate reply.

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

¶ 237: concealment of "the secret token sales, RegD wallet diversions, and wallet looting that directly affected the value of Wang's equity and token allocation." Diminution in the value of holdings caused by misappropriation of corporate assets is the paradigm derivative injury, shared ratably by every stockholder. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033, 1039 (Del. 2004); *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). The "directed at Wang individually" label (Dkt. 1, Compl. ¶ 238) does not transform it, and Wang's April 29, 2026 Delaware amendment recasting these same allegations as exclusively derivative claims, under verification, is his own assessment of whose injury this is. The Opposition's observation that a stockholder may in principle suffer both corporate and individual harm only restates *Tooley*; it does not identify an individual injury pleaded here that is not compensation owed under the contracts (addressed by the economic loss rule and Counts Seven through Nine) or value diminution (derivative).

Because the claim is derivative, Fed. R. Civ. P. 23.1 applies, and the failure is total: the Complaint is unverified and contains no demand or futility allegations. (Dkt. 18, Mot. at 10–11.) The Opposition's only answer is that the claim is direct. It is not, and the count should be dismissed as to the Cerebellum Defendants, with the additional observation that neither Cerebellum nor Interdata is alleged to owe Wang any fiduciary duty at all, a point the Opposition does not contest. (*Id*. at 11.)

**E.  The Remaining Counts Fail for the Reasons the Motion Stated.**

 **1.  *Count Three (Fraud) Remains Unparticularized.***

The Opposition's defense of Count Three is the Tokenomics document plus the categories at ¶¶ 165–69. The categories are attributed to "Defendants" collectively while every alleged speaker is Jin; they carry no dates beyond "repeatedly from 2019 through 2022," no places, and no audiences. *Vess*, 317 F.3d at 1106–07; *Swartz*, 476 F.3d at 764–65. As to Interdata, the count alleges nothing at all. As to Cerebellum, the Complaint never identifies which of Jin's alleged statements are charged to the company or in what capacity he is alleged to have spoken, an omission "Defendants" cannot fill, since Wang disclaims

alter ego (Dkt. 24, Opp. 5:13–15) and Rule 9(b) forbids undifferentiated group pleading. The representations aimed at Wang himself, such as "equal partner[ship]" and his compensation (Dkt. 1, Compl. ¶¶ 165, 169) are pleaded as Jin's personal promises, not corporate statements. The joint-attribution and same-act-two-defendants defects discussed in § II.A.3 above apply here in full.

### 2. *Count Five (Conversion) Is Defeated by Its Own Property Paragraph.*

The Opposition litigates a conversion claim the Complaint does not contain: a claim for 861 million tokens taken by a defective smart contract. (Dkt. 24, Opp. 7:8–10.) But Count Five identifies the converted "property" as the $300,000 bonus earned under the Bonus Agreement, $375,000 in unpaid salary under the Term Sheet, the 18.8% equity interest under the Stock Repurchase Agreement, "$CERE Tokens promised as advisor compensation," and access to social media accounts; and it pleads the wrongful dominion as "refusing to pay" and "refusing to transfer promised tokens." (Dkt. 1, Compl. ¶¶ 186, 188.) The smart contract appears nowhere in ¶¶ 185–91. Every item except the social-media accounts is money or securities owed under a written agreement, the "mere contractual right of payment" *Voris* holds is not convertible. *Voris v. Lampert*, 7 Cal. 5th 1141, 1151–52 (2019). As for the tokens, "promised" is the Complaint's word, and the Complaint admits non-delivery. (*Id*. ¶¶ 80, 182.) The January 6, 2021 "writing" the Opposition invokes as a mutual confirmation of vesting is alleged to be Wang's own email to Jin. (*Id*. ¶ 46.) And the social-media accounts fail on ownership: Wang pleads access to accounts he "helped build" for the company's business, not accounts he owned. (*Id*. ¶¶ 186–87; Dkt. 18, Mot. at 12.)

### 3. *Count Six (§ 496) Pleads a Commercial Dispute, in Its Own Words.*

Count Six omits the tokens from its property allegation altogether (Dkt. 1, Compl. ¶ 197 (bonus, salary, equity)); pleads the "theft" as "making false promises to induce Wang to earn his compensation" and "knowingly breaching contractual obligations" (*id*. ¶¶ 198–99); describes the withheld property as the bonus "promised but never paid," the salary "refused," the equity "denied," and "the tokens they failed to deliver" (*id*. ¶ 200);

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

and alleges direct damages "exceeding $675,000," the sum of the unpaid bonus and salary, in a pleading that values the token allocation at $387 million (*id*. ¶¶ 203, 78). A count that pleads knowing breach of contract as theft and caps its damages at the contract sums is *Lacagnina* and *Siry's* "ordinary commercial default," not civil theft. *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 969–70 (2018); *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361–62 (2022). The smart-contract theory the Opposition substitutes is not pleaded in the count, and the allegation it borrows from ¶ 81 is made on information and belief, in the alternative ("faulty or deliberately defective"), with knowledge alleged as "knew or should have known," which is the antithesis of the criminal intent *Siry* requires.

### 4. Count Eleven (Unjust Enrichment) Is Foreclosed by the Contracts Wang Affirms.

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), permits quasi-contract pleading in the alternative, but only where the existence or enforceability of the governing contract is in doubt. *See Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001). Wang's pleading affirms his contracts—he sues on all three—and his restitution theory seeks the same benefits: ¶ 242 alleges contributions made "in reliance on promises of compensation, equity, and token allocations." Where an express contract governs the exchange, a plaintiff cannot use quasi-contract to re-price his side of it. *Cal. Med. Ass'n*, 94 Cal. App. 4th at 172. The Opposition's premise that Defendants "deny the contracts bind them" (Dkt. 24, Opp. 21:18) conflates two different disputes: which defendants are parties (resolved by Wang's own signatory concession) and whether the signatory entities' contracts are valid (which no Defendant contends here).

### 5. Count Twelve Fails on Favorable Termination and Probable Cause.

The Opposition's only distinction of *Friedman v. Stadum*, 171 Cal. App. 3d 775 (1985), that it "arose on a fully developed record" (Dkt. 24, Opp. 9:14-15), misstates the case. *Friedman* was an appeal from judgments of dismissal entered after demurrers were sustained without leave to amend; the Court of Appeal affirmed, at the pleading stage, on judicial notice of the pending appeal in the underlying action. 171 Cal. App. 3d at 777–79.

That is this case's posture. The Public Prosecution's appeal of the February 26, 2026 acquittal was filed on March 12, 2026 and registered as Appeal No. 3559/2026, a month before Wang filed this action. (Dkt. 20-5, Vatrenko Decl. Ex. D.) Favorable termination is Wang's element to plead; once the appeal's existence is judicially noticed (and Wang concedes its existence and filing may be noticed, Dkt. 24, Opp. 9:21-22), it is his burden to plead a final termination, not Defendants' to prove the appeal's current status. He pleads none, because there is none.

The Opposition insists that the Complaint "does not rest probable cause on the acquittal alone" (*id*. 10:25-26), but the Complaint says it does: ¶ 248 states that the Dubai court's findings "establish that neither the criminal prosecution nor the civil claim had any evidentiary foundation at their inception," and ¶ 253 alleges that "[t]he Dubai Criminal Court's subsequent findings establish that these accusations were knowingly false." That is hindsight reasoning from an acquittal rendered on a beyond-a-reasonable-doubt standard, which is the inference *Sheldon Appel* forbids, because probable cause is measured objectively on the facts known at initiation, against the far lower "legally tenable" bar. *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 868, 878 (1989).

Wang's procurement authorities do not fill the gap. *Williams* supplies only the principle that knowingly giving false information to law enforcement can make the informant responsible for initiating the proceeding. *Williams v. Hartford Ins. Co.*, 147 Cal. App. 3d 893, 898 (1983). *Awabdy* goes further, but not in Wang's direction. Its favorable-termination holding addressed a prosecution that had ended—a dismissal in the interests of justice—and asked only whether that concluded disposition was consistent with innocence. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). It says nothing about a prosecution that remains alive on the prosecuting authority's appeal. And *Awabdy*'s probable-cause discussion confirms the pleading burden Wang has not met: the presumption of prosecutorial independence yields only to well-pleaded facts showing that the prosecution was "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* at 1067. Wang's only such "facts" are the

Dubai court's subsequent findings, from which the Complaint reasons backward. (Dkt. 1, Compl. ¶¶ 248, 253.) Nor does the Opposition identify any California decision extending the tort to a foreign criminal proceeding; it concedes that there is none and asks this Court to be the first, in a case where the foreign prosecution remains live on appeal.

Leave to amend to plead the April 21, 2026 acquittal in Case No. 31801/2025 should be denied as futile: the probable-cause defect, the foreign-proceeding problem, and the pleading's backward-looking theory of knowing falsity are identical as to both Dubai cases.

### 6. *Count Thirteen Fails on Confinement, Causation, and the Act-of-State Doctrine.*

The Opposition adds an "arrest and detention" theory (Dkt. 1, Compl. ¶ 136) to the travel ban (*id*. ¶ 255). Neither allegation carries the facts the tort requires: no dates, no duration, no conditions, and, as to the Cerebellum Defendants, no factual allegation of what either entity did to procure any confinement beyond filing the criminal complaint the Public Prosecution independently evaluated and pursued. Under *Asgari*, liability for confinement ends at the institution of lawful process even where the procuring party is alleged to have supplied false information; conduct of that kind sounds, if at all, in malicious prosecution. *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757–60 (1997). The travel ban is a measure imposed and maintained by the UAE authorities, and the Opposition's own point that the ban persists after the acquittal (Dkt. 24, Opp. 23:9-11) proves that its continuation answers to the UAE's processes, not to anything Defendants control. And Wang's reliance on Civil Code § 47(b)(5) presupposes a knowingly false report; the Complaint's knowing-falsity allegation is the ¶ 253 hindsight inference addressed above.

### 7. *Count Fourteen Serves No Useful Purpose.*

Wang seeks a declaration that he owns 18.8% of Cerebellum, is owed compensation, and was invalidly terminated. (Dkt. 1, Compl. ¶ 264.) The 3798 Action already puts Wang's equity and the Term Sheet's validity directly at issue, including through a declaratory count that Wang holds no equity. A second, mirror-image

declaration in a second case before a second judge is the definition of a declaratory claim without useful purpose. (Dkt. 18, Mot. at 15.) The Opposition's answer that the 3798 Action "does not adjudicate Wang's affirmative claims" (Dkt. 24, Opp. 22:3–4) is an argument for asserting those claims in the 3798 Action, not for maintaining a parallel suit.

**F.  At a Minimum, the Surviving Claims Belong in the First-Filed 3798 Action.**

The Opposition does not dispute the overlap; it proposes to manage it by relating the cases under Civil Local Rule 3-12 and consolidating under Rule 42(a). (Dkt. 24, Opp. 15:19-24.) That is a concession. Wang's Complaint itself reserves the right to seek relation or consolidation with the 3798 Action (Dkt. 1, Compl. ¶ 9 n.1), and his pleading describes the two actions as opposite characterizations of the same events.

The mirror-image posture is no obstacle. The first-to-file rule turns on chronology and substantial similarity of parties and issues and permits a district court to transfer, stay, or dismiss the later action. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623, 625 (9th Cir. 1991). Nor are the actions meaningfully distinct because Wang's RICO and securities counts "are not asserted in the 3798 Action" (Dkt. 24, Opp. 15:25-26): those counts repackage the same operative facts under federal labels, *see* § II.A above, and substantial similarity of issues—not identity of claims—is the test. And Wang's timing point that no compulsory-counterclaim obligation attaches until he answers in the 3798 Action describes his strategy rather than a defense of it. His claims arise from the same transaction as the 3798 Action and would be compulsory counterclaims there; the only thing standing between them and Rule 13(a) is this lawsuit, because a claim already "the subject of another pending action" is exempt. Fed. R. Civ. P. 13(a)(2)(A). Wang filed here to manufacture precisely that exemption. As for Counts Twelve and Thirteen, claims that accrue while an action is pending may be asserted there by supplemental pleading, Fed. R. Civ. P. 13(e), and those counts fail in any event for the independent reasons above. The Court should not reward the maneuver: it should dismiss without prejudice to asserting any surviving claim as a counterclaim in the 3798 Action, or stay this action pending the 3798

CEREBELLUM'S AND INTERDATA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Action's resolution. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

### III.  CONCLUSION

The Court should dismiss the Complaint as to the Cerebellum Defendants: Counts Seven and Nine on Wang's signatory concession (with prejudice as to non-signatories); Counts One, Two, and Four with prejudice; and the remaining counts for the reasons above. Leave to amend should be denied as to Counts Twelve and Thirteen as futile, and otherwise conditioned on Wang's identification of the specific facts an amendment would add. In the alternative, the Court should dismiss without prejudice to refiling any surviving claim as a compulsory counterclaim in the 3798 Action, or stay this action.

DATED:  June 15, 2026

VATRENKO LAW P.C.

By: _____

IEVGENIIA P. VATRENKO
Attorney for Defendants CEREBELLUM
NETWORKS, INC., INTERDATA
NETWORK, INC., and FRED JIN