HANSON BRIDGETT LLP
MATTHEW F. MILLER, SBN 172661
mmiller@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

VATRENKO LAW P.C.
IEVGENIIA P. VATRENKO (NY Bar No. 4904397) (*pro hac vice*)
jenny@vatrenkolaw.com
2 Park Avenue, Floor 20
New York, New York 10016
Telephone:    (718) 451-6384

Attorneys for Defendant FRED JIN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

KEN WANG, an individual,

        Plaintiff,

    v.

FRED JIN, an individual;
XIN JIN, an individual;
MAREN SCHWARZER, an individual;
MARTIJN BROERSMA, an individual;
BRAD BAO, an individual;
FRANCOIS GRANADE, an individual;
CEREBELLUM NETWORKS, INC., a Delaware corporation;
INTERDATA NETWORK INC., a British Virgin Islands entity;
BNW NETWORK GMBH, a German entity;
CEF AI INC., a Delaware corporation; and DOES 1–50, inclusive,

        Defendants.

Case No. 3:26-cv-03111-WHO

**DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT**

Date:    July 15, 2026
Time:    2:00 p.m.

Action Filed:    April 10, 2026
Trial Date:    None Set

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT..........................................................................................................2

        A.      Mr. Jin Joins and Incorporates the Cerebellum Defendants' Reply. ..................2

        B.      The Economic Loss Rule Requires Dismissal of Counts One, Two, Three,
                Five, Six, Ten, and Eleven.................................................................................2

        C.      Wang Cannot Hold Mr. Jin Personally Liable for Corporate Obligations. ........6

        D.      The Bonus Claim (Count Seven) Accrued in 2021 and Is Untimely. ................8

                1.      The Complaint Establishes April 21, 2021, as the Performance
                        Date and Therefore the Breach Date........................................................8

                2.      The Limitations Defense Is Properly Resolved on the Pleadings.............9

                3.      The Bonus Claim Is Untimely Under Either Side of the Tolling
                        Question. ..............................................................................................10

        E.      The Complaint Fails Rule 9(b) and the PSLRA as to Mr. Jin. ........................10

                1.      Wang's Joint Attribution Fails the Rule (Count Three). .......................10

                2.      The PSLRA Requires Particularized Scienter as to Mr. Jin
                        (Count Four). .......................................................................................11

        F.      Counts Twelve and Thirteen Must Be Dismissed as to Mr. Jin. ......................12

        G.      The Action Substantially Duplicates the 3798 Action, and a Stay or
                Consolidation Is the Appropriate Alternative Remedy. ...................................14

III.    CONCLUSION.....................................................................................................15

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Asgari v. City of Los Angeles,*
  15 Cal. 4th 744 (1997) ...................................................................................................13, 14

*Du Lac v. Perma Trans Products, Inc.,*
  103 Cal. App. 3d 937 (1980) .................................................................................................12

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003) ..............................................................................................14

*Erlich v. Menezes,*
  21 Cal. 4th 543 (1999) .............................................................................................................5

*Fermino v. Fedco, Inc.,*
  7 Cal. 4th 701 (1994) .............................................................................................................13

*Friedman v. Stadum,*
  171 Cal. App. 3d 775 (1985) ...........................................................................................12, 14

*Jablon v. Dean Witter & Co.,*
  614 F.2d 677 (9th Cir. 1980) ...............................................................................................9, 10

*Kim v. Westmoore Partners, Inc.,*
  201 Cal. App. 4th 267 (2011) ..................................................................................................4

*Lacagnina v. Comprehend Sys., Inc.,*
  25 Cal. App. 5th 955 (2018) ....................................................................................................4

*Lance Camper Mfg. Corp. v. Republic Indem. Co.,*
  44 Cal. App. 4th 194 (1996) ....................................................................................................5

*Landis v. North American Co.,*
  299 U.S. 248 (1936).................................................................................................................15

*Lazar v. Superior Court,*
  12 Cal. 4th 631 (1996.........................................................................................................3, 4

*Oscar v. Univ. Students Co-op. Ass'n,*
  965 F.2d 783 (9th Cir. 1992) ....................................................................................................3

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

*Rattagan v. Uber Technologies, Inc.,*
    17 Cal. 5th 1 (2024) ...................................................................................................1, 2, 3

*Robinson Helicopter Co. v. Dana Corp.,*
    34 Cal. 4th 979 (2004) ..........................................................................................................3

*Romano v. Rockwell Int'l, Inc.,*
    14 Cal. 4th 479 (1996) .......................................................................................................8, 9

*Salt Dome Oil Corp. v. Schenck,*
    41 A.2d 583 (Del. 1945) ........................................................................................................7

*Sheldon Appel Co. v. Albert & Oliker,*
    47 Cal. 3d 863 (1989) ....................................................................................................12, 14

*Sullivan v. County of Los Angeles,*
    12 Cal. 3d 710 (1974) ..........................................................................................................12

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ...........................................................................................10, 11

*Taylor v. Johnston,*
    15 Cal. 3d 130 (1975) .............................................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)..............................................................................................................11

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,*
    1 Cal. 3d 586 (1970) ..........................................................................................................6, 7

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................................11

*Voris v. Lampert,*
    7 Cal. 5th 1141 (2019) ...........................................................................................................4

*Wolf v. Walt Disney Pictures & Television,*
    162 Cal. App. 4th 1107 (2008) ...............................................................................................7

Case No. 3:26-cv-03111-WHO
DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

**Statutes**

15 U.S.C. § 78u-4(b) ...................................................................................................................11

18 U.S.C. § 1964(c) ......................................................................................................................3

Cal. Civ. Code § 47(b)(5) ...........................................................................................................12

Cal. Code Civ. Proc. § 337(a) ................................................................................................8, 10

Cal. Penal Code § 496 ...................................................................................................................4

8 Del. C. § 151(a) ..........................................................................................................................7

8 Del. C. § 158 ..............................................................................................................................7

8 Del. C. § 219(c) ..........................................................................................................................7

**Rules**

Fed. R. Civ. P. 9(b) .........................................................................................................1, 10, 11

Fed. R. Civ. P. 12(b)(6) .................................................................................................................9

Fed. R. Civ. P. 13(a) ..............................................................................................................14, 15

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

## I.  INTRODUCTION

Wang's Opposition begins by giving away two points. *First*, Wang concedes that the Seventh, Eighth, and Ninth Causes of Action are miscaptioned as against "all Defendants." (Dkt. 24, Opp. 5:11-13). *Second*, Wang expressly disclaims any alter-ego theory. (*Id.* at 5:13-15.) Those concessions resolve Counts Seven, Eight, and Nine as to Xin Jin, Maren Schwarzer, Martijn Broersma, Brad Bao, Francois Granade, BNW Network GmbH, and CEF AI Inc.: the contract counts must be dismissed as to the non-signatory Defendants.

In the opening brief, Mr. Jin established three independent grounds for dismissal, in addition to the grounds joined from the Cerebellum Defendants' Motion. *First*, California's economic loss rule bars Counts One, Two, Three, Five, Six, Ten, and Eleven because the tort damages Wang alleges are coextensive with the contract damages he separately pleads, a fact Paragraph 154 of the Complaint admits on its face. *Second*, the contract Counts (Seven, Eight, and Nine) cannot be sustained against Mr. Jin personally because the operative obligations Wang sues on are allocated expressly to "the Company," and not to Mr. Jin. *Third*, the Complaint's pervasive group pleading fails Rule 9(b) and the PSLRA's particularity requirements. The Motion further established that the Bonus claim is time-barred under controlling California law and that Counts Twelve and Thirteen fail on the face of the Complaint and the judicially noticed Dubai records.

Wang's Opposition does not meaningfully rebut any of these grounds. It substitutes argument by mischaracterization: case law that does not say what Wang says it says, a pleading whose paragraphs contradict the positions the Opposition takes, and a legal framework the operative facts do not support. Nor are the mischaracterizations isolated. As shown below, the Opposition misstates the procedural posture of its lead authorities (*Friedman*, *Rezner*); quotes *Rattagan* up to—but not including—the sentence in which the California Supreme Court qualified the very language quoted; attributes to the Complaint a breach date, a property theory, and a corporate structure that do not appear in the pleading; and asserts, as established fact, allegations the Complaint makes only on information and

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

belief and in the hedged alternative. One misreading might be advocacy. A dozen, each resolving in Wang's favor, is a pattern that bespeaks intent rather than error, and the Court should weigh the Opposition's characterizations of the case law and of Wang's own pleading accordingly.

For these reasons and those set forth below, the Court should dismiss the Complaint.

## II.  ARGUMENT

### A.  Mr. Jin Joins and Incorporates the Cerebellum Defendants' Reply.

Mr. Jin joins and incorporates the Cerebellum Defendants' Reply on each of the arguments raised in the Cerebellum Defendants' Motion (Dkt. 18) and joined and incorporated by Mr. Jin in his Motion (Dkt. 19, § IV.A). Those arguments apply with equal or greater force to Mr. Jin individually. The rebuttals supplied in the Cerebellum Defendants' Reply require dismissal as to Mr. Jin for the same reasons set forth there.

### B.  The Economic Loss Rule Requires Dismissal of Counts One, Two, Three, Five, Six, Ten, and Eleven.

Wang reads *Rattagan v. Uber Technologies, Inc.*, 17 Cal. 5th 1, 38 (2024), as a categorical "intentional tort" exception. (Dkt. 24, Opp. 12:7-9.) But the same page supplies the complete test: a tort claim is available alongside a contract claim only where (1) the cause of action's elements "can be established independently of the parties' contractual rights and obligations" and (2) the tortious conduct exposes the plaintiff to "a risk of harm beyond the reasonable contemplation of the parties." *Rattagan*, 17 Cal. 5th at 38. Both conditions are necessary. Earlier in the opinion the California Supreme Court was clearer still: "[t]he law eschews inquiry into a breaching party's motives," and the contract-damages limitation "applies even when the breach is accomplished in a fraudulent manner." *Id.* at 35. "If all the defendant has allegedly done is violate the terms of the parties' contract … the defendant's liability is limited by the contract." *Id.* at 37. The intentional-versus-negligent distinction Wang invokes is not the test. Wang's quotation also stops one sentence short: immediately after the language the Opposition excerpts, the

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Court cautioned that "[t]his conclusion, however, does not provide the dispositive answer" and proceeded to state the two-part test set out above. *Id.* at 37.

The test's application here is not close. Paragraph 154 pleads Wang's RICO injury as the "loss of his 18.8% equity stake in Cerebellum, unpaid salary, unpaid bonuses, [and] loss of expected token allocation," each a benefit promised by the Term Sheet, the Bonus Agreement, or the compensation arrangements Wang pleads. (Dkt. 1, Compl. ¶¶ 46, 77.) Every tort count claims the same losses. *See id.* ¶¶ 174 (fraud), 186 (conversion), 197, 203 (§ 496), 238 (fiduciary duty), 242 (unjust enrichment). Wang answers that "the fact that tort and contract damages may overlap in amount is immaterial." (Dkt. 24, Opp. 12:18-19.) But the point is not that the numbers happen to match. The harm itself is the same harm: nonreceipt of promised compensation. That is contract risk allocated by the parties' agreements and remediable, if at all, in contract.

Wang's count-specific responses fare no better.

*Federal RICO (Counts One and Two).* Wang argues that California's economic loss rule "does not govern" federal RICO. (Dkt. 24, Opp. 12:26-13:3.) The Motion's point is different: § 1964(c) requires injury to "business or property," and contract-type harm does not qualify. *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992). The "token sequestration" injury Wang invokes is itself contract-type harm. *See infra*. The Complaint pleads that injury the same way: Paragraph 154 describes it as the "loss of expected token allocation," which is a defeated expectancy, not the taking of property Wang already possessed; and the Prayer measures the token damages by "the destruction of value" of the allocation, which is the same price-diminution theory the Opposition disclaims. (Dkt. 1, Compl. ¶ 154; *id.*, Prayer ¶ B.)

*Common Law Fraud (Count Three).* Wang relies on the fraudulent-inducement line of *Lazar v. Superior Court*, 12 Cal. 4th 631, 638-39 (1996), which permits a fraud claim "independent of" the breach. (Dkt. 24, Opp. 13:23-14:5.) But the misrepresentations he pleads (Dkt. 1, Compl. ¶¶ 165-69) concerning partnership, token lockups, business operations, and compensation are the contracts' subject matter. *Robinson Helicopter Co. v.*

*Dana Corp.*, 34 Cal. 4th 979, 991 (2004) (fraud claim survives economic loss rule only where "independent of" the breach of contract). Where the alleged "false promise" coincides with the contract obligation, *Lazar* provides no escape.

*Conversion and § 496 (Counts Five and Six).* Wang's strongest count-specific argument is that the tokens are "specific, identifiable property" distinguishable from the "mere debt" *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019), addressed. (Dkt. 24, Opp. 13:13-21.) But this argument fails on Wang's own pleading. The tokens were "compensation for Wang's role as co-founder" (Dkt. 1, Compl. ¶ 77) that "vested" pursuant to a schedule (*id*. ¶ 46)—both contractual concepts—and Wang admits that he never possessed them: the alleged smart contract "permanently sequestered" the tokens before delivery (*id*. ¶ 81). That is a failure-to-deliver case, not a took-already-possessed-property case. *Voris*, 7 Cal. 5th at 1151, squarely bars it: "the simple failure to pay money owed does not constitute conversion" (quoting *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011)). Count Six adds nothing: § 496 reaches only "property obtained by theft," which presupposes property the defendant took from the plaintiff. *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 969-70 (2018) (unpaid compensation is not "property" capable of being stolen under § 496). The Counts themselves confirm it. Count Five identifies the converted "property" as the $300,000 bonus under the Bonus Agreement, $375,000 in unpaid salary under the Term Sheet, the 18.8% equity interest under the Stock Repurchase Agreement, and "$CERE Tokens promised as advisor compensation," and pleads the wrongful dominion as "refusing to pay" and "refusing to transfer promised tokens." (Dkt. 1, Compl. ¶¶ 186, 188.) The smart contract appears nowhere in Count Five (*id*. ¶¶ 185-91), and the Complaint elsewhere admits that Defendants "have refused to deliver Wang's full token allocation." (*Id*. ¶ 80.) Count Six omits the tokens from its property allegation altogether (*id*. ¶ 197), pleads the "theft" as "making false promises to induce Wang to earn his compensation" and "knowingly breaching contractual obligations" (*id*. ¶¶ 198-99), and alleges direct damages "exceeding $675,000"—precisely the sum of the unpaid bonus and salary—in a pleading that values

the token allocation at $387 million. (*Id*. ¶¶ 203, 78.) And the smart-contract allegation the Opposition substitutes for it is pleaded "[u]pon information and belief," in the alternative ("faulty or deliberately defective"), with knowledge alleged as "knew or should have known." (*Id*. ¶ 81.) That is negligence language; it cannot supply the criminal intent section 496 requires or the intentional dominion conversion requires.

*Breach of Fiduciary Duty (Count Ten).* That fiduciary duty is "imposed by law" (Dkt. 24, Opp. 13:5-10) does not save the Count. The question is whether the *conduct* Wang alleges as a breach is fiduciary conduct or contract performance. Wang alleges that Mr. Jin breached by failing to pay the bonus, failing to issue equity, failing to deliver tokens, and failing to honor the buy-back, every one of which is contract performance. *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract."). The Complaint concedes as much: Paragraph 236 grounds the asserted duty in "the co-founder relationship" and in "the agreements between Wang and Jin in which Jin undertook obligations to Wang personally, including the obligation to issue equity, pay compensation, and deliver tokens." (Dkt. 1, Compl. ¶ 236.) A duty pleaded as arising from the agreements is not a duty independent of them.

*Unjust Enrichment (Count Eleven).* Wang concedes that Count Eleven is pleaded "in the alternative" to his contract claims. (Dkt. 24, Opp. 14:9.) But California law is settled: "an action based on … quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996). Wang affirmatively pleads the Term Sheet, the Bonus Agreement, and the SRA as operative. The alternative is, therefore, foreclosed.

Wang closes by arguing that Mr. Jin "cannot invoke the rule on a premise he himself rejects," that a defendant who denies owing the contract obligations cannot hold Wang to a contract remedy. (Dkt. 24, Opp. 14:15-24.) But the economic loss rule turns on the nature of the harm alleged, not on whether the defendant is the contract obligor.

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Wang's alleged harm is the loss of his contractual bargain, and it remains contract-type harm no matter whom he sues for it.

Finally, on the separate point that "damage to business reputation," "lost business opportunities," "legal fees," and similar categories are not cognizable RICO injuries, Wang concedes the issue: "[i]f the Court finds any single damages item non-cognizable, the remedy is to disregard that item, not to dismiss counts that plead concrete property injury." (Dkt. 24, Opp. 19:11-12.) Those categories must be stricken. What remains is the token sequestration, which is contract-type harm barred by the economic loss rule.

Counts One, Two, Three, Five, Six, Ten, and Eleven must be dismissed.

**C. Wang Cannot Hold Mr. Jin Personally Liable for Corporate Obligations.**

Wang opens with a concession that resolves Counts Seven, Eight, and Nine as to the non-signatory Defendants. Wang "will conform the pleading to name only each agreement's signatories as to Counts Seven, Eight, and Nine," and "does not invoke an alter-ego theory to hold any non-signatory liable on the contract counts." (Dkt. 24, Opp. 5:11-15.) Counts Seven, Eight, and Nine must be dismissed as to Xin Jin, Maren Schwarzer, Martijn Broersma, Brad Bao, Francois Granade, BNW Network GmbH, and CEF AI Inc., with prejudice.

What remains is Wang's contention that Mr. Jin is personally liable on Counts Eight and Nine because he "is, on its face, a Party" to the Term Sheet and the SRA. (*Id.* at 16:12-13.) The argument confuses being a signatory with being the obligor of the particular obligation Wang seeks to enforce. California has rejected that confusion for decades: directors and officers "are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970). The question is not whether Mr. Jin signed, but whether he "purported to bind [himself] individually" to the obligations Count Eight (salary and equity) and Count Nine (buy-back and shareholder recognition) seek to enforce. The contracts answer that question on their face.

Wang acknowledges that the Term Sheet's drafters distinguished obligations of "the

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Company" from obligations of Mr. Jin personally "within the same sections." (Dkt. 24, Opp. 16:21-23.) His concession is dispositive. The salary provision Wang sues on says, "*The Company* shall pay Wang a salary of US$250,000 per annum." (Dkt. 1-1, Term Sheet § 4(6).) (Emphasis added.) The equity provision says, "*Company* shall grant to Wang a fully-vested 19.8% equity interest." (*Id.* § 5.) (Emphasis added.) The drafters' acknowledged ability to assign obligations to Mr. Jin personally when they wished, paired with their election to assign the salary and equity obligations to "the Company," is unambiguous. Contract interpretation of an unambiguous writing is a question of law the Court may decide at the pleading stage. *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008).

Wang's reliance on the Binding Effect clause (Dkt. 1-1, Term Sheet § 10) and the attorneys'-fee provision (*id.* § 8) does not alter the analysis. A binding effect clause makes the agreement enforceable against the identified Parties; it does not reallocate the obligations the agreement assigns to particular Parties. If a binding effect clause did the work Wang ascribes to it, then every Party, including Wang himself, would be liable for every other Party's obligations. Section 8 is similarly symmetric: it applies to "the losing Party" and binds Wang to the same extent that it binds Mr. Jin.

Count Nine fails for the same reason. The SRA is by its title and terms a buy-back by "the Company." (Dkt. 1-2, SRA § 1.) The named buyer is Cerebellum, the named issuer recognizing Wang's remaining 18.8% is Cerebellum, and Wang's own pleading confirms that "Cerebellum paid the $250,000 repurchase price." (Dkt. 1, Compl. ¶ 229.) The breaches Wang actually pleads (*id.* ¶ 231) concern Cerebellum's obligations as the equity issuer. Only Cerebellum, as the issuer of its own stock, can recognize or refuse to recognize ownership of that stock. *See* 8 Del. C. §§ 151(a), 158, 219(c); *Salt Dome Oil Corp. v. Schenck*, 41 A.2d 583, 588-89 (Del. 1945). Mr. Jin's signature was executed in his capacity as Cerebellum's CEO, not as the assumption of a personal shareholder-recognition obligation. *See Haidinger-Hayes*, 1 Cal. 3d at 595.

Wang's final argument is that his claims against Mr. Jin "do not rest on the salary

DEFENDANT FRED JIN'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

and equity provisions alone" because Mr. Jin personally engineered the defective smart contract. (Dkt. 24, Opp. 16:27-17:5.) But that contention does not save contract-based Counts Eight and Nine. The smart-contract allegations bear on Wang's tort theories against Mr. Jin individually (Counts Three, Five, Six, and Ten) and not on the question of whose obligations the Term Sheet and SRA establish. And those tort Counts fail under the economic loss rule for the reasons set forth in § II.B above. Counts Eight and Nine must be dismissed as to Mr. Jin.

## D.  The Bonus Claim (Count Seven) Accrued in 2021 and Is Untimely.

Wang concedes that his Complaint admits that the bonus "became due and payable on April 21, 2021." (Dkt. 24, Opp. 4:14-15; Dkt. 1, Compl. ¶ 210.) That admission is dispositive of accrual. Wang's effort to push it past the four-year limitations period (Cal. Code Civ. Proc. § 337(a)) and past the further deadline created by the Tolling Agreement fails on the face of the Complaint and the well-established terms of *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 487 (1996).

### 1.  The Complaint Establishes April 21, 2021, as the Performance Date and Therefore the Breach Date.

The default rule under California law is that "a cause of action for breach of contract does not accrue before the time of breach," *Romano*, 14 Cal. 4th at 488, and "[t]here can be no actual breach of a contract until the time specified therein for performance has arrived," *id.* at 488 (quoting *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975)). But once that time arrives without performance, the breach is complete and the cause of action accrues. *Id.* Paragraph 210 of the Complaint fixes the performance date as April 21, 2021. The time specified for performance had arrived, and Mr. Jin's alleged failure to pay on that date was the breach.

Wang's attempt to defer the breach to April 22, 2023, when Mr. Jin's counsel allegedly "first repudiated the obligation and denied the bonus was ever owed" (Dkt. 24, Opp. 4:21-23, citing Dkt. 1, Compl. ¶¶ 119, 212) reads *Romano* backwards. It also reads into the Complaint an allegation the Complaint does not contain. No paragraph alleges

when Mr. Jin "reneged:" Paragraph 212 is undated, and Paragraph 119—the only paragraph that carries the April 22, 2023 date—describes a letter accusing Wang of misappropriating "Cerebellum funds," destroying company records, and meddling in company operations. It says nothing about the bonus, the $300,000, or any denial that the bonus was owed. The assertion that the letter repudiated "the very funds Jin had set aside to satisfy the bonus" (Dkt. 24, Opp. 4:21-23) is not an allegation, and Wang cannot amend his Complaint through his opposition brief. In any case, *Romano*'s anticipatory-repudiation framework operates only where (a) "there are ongoing contractual obligations" and (b) the plaintiff "continued to perform and accept compensation" under the contract, in which case the plaintiff may elect to "rely on the contract despite a breach." 14 Cal. 4th at 489-91. The Bonus Agreement is not an ongoing contractual obligation; it is a discrete payment obligation triggered by a one-time event—the public sale of $CERE tokens exceeding $10 million. (Dkt. 1, Compl. ¶¶ 206-07, 210.) Wang does not allege that he "continued to perform" under the Bonus Agreement after April 21, 2021.

Wang's narrower theory that Mr. Jin "treated the bonus as owed and designated approximately $300,000 in a wallet Wang controlled as the payment" (Dkt. 24, Opp. 4:18-19) does not save the claim either. Earmarking funds already sitting in a wallet Wang controlled is not payment of the sum owed. The Complaint admits as much by alleging that Mr. Jin later "refused to pay Wang the bonus" and "denied the bonus was ever owed." (Dkt. 1, Compl. ¶ 212.) The bonus was not paid in 2021. That is the breach.

## 2. The Limitations Defense Is Properly Resolved on the Pleadings.

Wang argues that "[a] limitations defense supports dismissal under Rule 12(b)(6) only when 'the running of the statute is apparent on the face of the complaint.'" (Dkt. 24, Opp. 4:5-7 (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).) The running of the statute is apparent here. The Complaint itself admits that the bonus "became due and payable on April 21, 2021." (Dkt. 1, Compl. ¶ 210.) Wang's speculation that some later breach date might be established on a fuller record (Dkt. 24, Opp. 4:24) is immaterial. The Complaint itself fixes accrual, and dismissal at the pleading stage is proper.

### 3.  *The Bonus Claim Is Untimely Under Either Side of the Tolling Question.*

The Tolling Agreement extends the four-year limitations period applicable to written contracts, Cal. Code Civ. Proc. § 337(a), by approximately 105 days. (Dkt. 20-2, Vatrenko Decl. Ex. A.) Four years from April 21, 2021 is April 21, 2025; the Tolling Agreement carries the deadline forward by approximately 105 days, to no later than August 4, 2025. Wang sued on April 10, 2026, or more than eight months too late. *See Jablon*, 614 F.2d at 682.

Wang's opposition to the Request for Judicial Notice of the Tolling Agreement argues that the Agreement's scope, the claims it reached, and accrual are "contested questions" not resolvable at the pleading stage. (Dkt. 25, Opp. to RJN at 1:22-2:1.) If that position prevails and the Tolling Agreement is set aside, Wang's Bonus claim is more clearly time-barred, not less. Without the tolling, the period expired on April 21, 2025, nearly a year before Wang sued. Wang cannot have it both ways: he is either tolled and eight months late, or untolled and nearly a year late. Either way, Count Seven is untimely.

### E.  The Complaint Fails Rule 9(b) and the PSLRA as to Mr. Jin.

Wang's response rests on a misreading of *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007). He argues that Rule 9(b) "does not demand that co-authored representations be artificially divided" and that joint attribution satisfies the rule. (Dkt. 24, Opp. 8:10-18, 21:1-2.) The Ninth Circuit has held otherwise: "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65. Joint attribution that fails to distinguish what one defendant said from what another defendant said falls short.

### 1.  *Wang's Joint Attribution Fails the Rule (Count Three).*

Wang's own showcase example proves the point. The Complaint attributes the April 2021 "Cere Network Tokenomics" document to "Jin and Broersma" jointly, without alleging who authored which representation, to what audience, or what each knew at the

time. (Dkt. 1, Compl. ¶¶ 55-56.) The remaining attributions are no better: the promotional statements about an "imminent mainnet launch and Fortune 500 adoption" are attributed to Broersma and Bao—not to Mr. Jin at all (*id*. ¶ 87)—and the misrepresentations at ¶¶ 165-69 are charged to "Defendants" collectively. That is the "lumping" *Swartz* forbids. And where the Complaint does name names, it assigns the same act to two people: both Xin Jin and Schwarzer allegedly signed off on the very same $16.6 million and $41.78 million transfers, each on information and belief. (*Id*. ¶¶ 14-15.)

Wang's "Jin alone" attributions (*id*. ¶¶ 64-66, 91, 92-93) do not cure the deficiency. The Complaint attributes "the transfers, diversions, and the defective smart contract" to Mr. Jin (*id.*), but those are alleged transactions, not the fraudulent representations on which Count Three rests. The fraud claim must be pleaded with particularity as to the misrepresentation. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (Rule 9(b) requires "the who, what, when, where, and how" of the misconduct). Identifying that Mr. Jin executed a transfer does not identify what he said.

### 2. The PSLRA Requires Particularized Scienter as to Mr. Jin (Count Four).

The PSLRA imposes a heightened standard. Wang must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and . . . all facts on which that belief is formed," 15 U.S.C. § 78u-4(b)(1), and, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *id.* § 78u-4(b)(2)(A). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (strong inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent").

The Complaint's blanket attribution of scienter to "Defendants" (Dkt. 1, Compl. ¶ 180) does not satisfy that standard as to Mr. Jin. Wang's only Jin-specific scienter allegation is that Mr. Jin "had already resolved to dump" insider tokens. (*Id.* ¶ 59.) That assertion is conclusory: the Complaint does not say when, on what facts, or that any resolution predated a particular statement attributed to Mr. Jin. The PSLRA does not allow

a "strong inference" of scienter to rest on labels. Nor can the inference rest on hedged pleading: the smart-contract allegation at the center of the Opposition is made "[u]pon information and belief," in the alternative ("faulty or deliberately defective"), with knowledge alleged as "knew or should have known." (Dkt. 1, Compl. ¶ 81; *accord id*. ¶ 237.) Allegations consistent with negligence cannot yield the "strong inference" the statute demands.

Wang's fallback that any particularity defect in Count Four is "curable" through amendment (Dkt. 24, Opp. 20:3-5) does not save the pleading as filed, and Counts Three and Four must be dismissed as to Mr. Jin. As for leave to amend, Wang's Opposition was the place to identify the facts an amendment would supply. It identifies none: no date on which Mr. Jin "resolved" to dump tokens, no statement of his to a particular audience, no fact supporting scienter beyond the labels the Complaint already pleads. If Wang seeks leave, he should be required to identify the new facts he would allege.

**F. Counts Twelve and Thirteen Must Be Dismissed as to Mr. Jin.**

Mr. Jin adopts the Cerebellum Defendants' Reply on the substantive elements of Counts Twelve and Thirteen, including favorable termination under *Friedman v. Stadum*, 171 Cal. App. 3d 775 (1985), objective probable cause under *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863 (1989), the absence of California authority recognizing malicious prosecution claims arising from foreign criminal proceedings, the pleading requirements imposed by *Du Lac v. Perma Trans Products, Inc.*, 103 Cal. App. 3d 937 (1980), and the narrow textual scope of California Civil Code § 47(b)(5). Three points warrant Mr. Jin's individual emphasis.

*First*, the Complaint pleads that "Interdata and Cerebellum," not Mr. Jin personally, filed the Dubai criminal complaint. (Dkt. 1, Compl. ¶¶ 129-30, 246, 253.) The conclusory assertion that Mr. Jin "acting through" those entities procured the prosecution (*id.* ¶ 246) does not satisfy the pleading requirements for individual liability. Malicious prosecution requires that the defendant himself be "actively instrumental in causing the prosecution." *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710, 720 (1974). For Count Thirteen, *Du Lac*

requires facts showing that Mr. Jin personally had "the intent to induce" the confinement, made accusations "of a character that could be expected to induce" the confinement, and took "an active role" beyond mere reporting. 103 Cal. App. 3d at 942-43. Wang's "acting through" allegation does none of that.

*Second*, neither form of confinement Wang invokes—"arrest and detention" (Dkt. 1, Compl. ¶ 136) and a UAE-imposed travel ban (*id.* ¶ 255)—is pleaded with the specificity required. The single conclusory phrase in Paragraph 136, that the Dubai criminal complaint "resulted in Wang's arrest and detention in a foreign jurisdiction," supplies no duration, no period, no conditions, and no facts identifying what Mr. Jin individually did to procure the arrest. The travel ban (*id*. ¶ 255) is, by Wang's own pleading, a measure imposed by UAE authorities in connection with the criminal proceedings. On either theory, the chain of causation between Mr. Jin and any UAE-imposed restraint was broken by the independent action of the Dubai Public Prosecution and the UAE courts. *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757-60 (1997) (under California law, a defendant's liability for false-imprisonment damages ends when criminal process is instituted).

Wang's attempt to confine *Asgari* to cases involving "accurate information" (Dkt. 24, Opp. 22:1-6) does not just stretch the case, it inverts its holding. The trial court in *Asgari* instructed the jury that an officer's false-imprisonment liability could include damages incurred "after the filing of formal charges where, for example, the officer knowingly presented false evidence to the prosecutor." 15 Cal. 4th at 748. The California Supreme Court reversed that instruction, holding that California law does not extend false-imprisonment liability past the institution of criminal process even where the procuring party knowingly supplied false information; such conduct sounds in malicious prosecution, not false imprisonment. *Id*. at 759-60. The principle is not unique to public employees. It flows from California's general definition of false imprisonment as a confinement "without lawful privilege," which Wang himself invokes through *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994). *See Asgari*, 15 Cal. 4th at 757. Confinement pursuant to lawful

criminal process is, by definition, with lawful privilege, regardless of who procured it.

*Third*, Wang's answers on the favorable-termination and probable-cause elements rest on misstatements. His only distinction of *Friedman v. Stadum*—that it "arose on a fully developed record" (Dkt. 24, Opp. 9:14-17)—misstates the case. *Friedman* affirmed judgments of dismissal entered after demurrers were sustained without leave to amend, based on judicial notice of the pending appeal in the underlying action. 171 Cal. App. 3d at 777-79. *Friedman* was decided in the same posture presented here, and favorable termination is Wang's element to plead, not Defendants' to disprove. Wang's insistence that the Complaint "does not rest probable cause on the acquittal alone" (Dkt. 24, Opp. 10:25-26) fares no better, because the Complaint says otherwise: Paragraph 248 reasons that the Dubai court's findings "establish that neither the criminal prosecution nor the civil claim had any evidentiary foundation at their inception," and Paragraph 253 alleges that the "Dubai Criminal Court's subsequent findings establish that these accusations were knowingly false." The Complaint's own logic runs backward from a later acquittal rendered on a beyond-a-reasonable-doubt standard—the hindsight inference *Sheldon Appel* forbids. 47 Cal. 3d at 878.

Wang's alternative request for leave to amend to add the April 21, 2026 acquittal in Case No. 31801/2025 (Dkt. 24, Opp. 10:12-22) would not cure these defects. The probable-cause inquiry, the absence of California authority recognizing the malicious prosecution tort as to foreign criminal proceedings, the deficient individual-conduct pleading as to Mr. Jin, and the *Asgari* problems with Count Thirteen apply with equal force regardless of which Dubai case Wang relies on. Amendment would be futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Counts Twelve and Thirteen should be dismissed as to Mr. Jin with prejudice.

**G. The Action Substantially Duplicates the 3798 Action, and a Stay or Consolidation Is the Appropriate Alternative Remedy.**

Mr. Jin's Motion adopted the Cerebellum Defendants' Rule 13(a) argument in full (Dkt. 19 § IV.G), and he likewise adopts their Reply, which answers Wang's first-to-file

and Rule 13(a) timing arguments. If the Court does not dismiss the claims that fail on the independent grounds set forth above, it should stay this action pending resolution of the 3798 Action. The power to enter such a stay does not depend on identity of parties or issues between the two proceedings. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

### III.  CONCLUSION

For the reasons set forth above and in the Cerebellum Defendants' Reply, Mr. Jin respectfully requests that the Court dismiss the Complaint in its entirety as to him, with prejudice. Wang's requests for leave to amend should be denied because the defects identified above are structural, not curable. In the alternative, if the Court is not prepared to dismiss claims that fail on the independent grounds set forth above, it should stay this action pending resolution of the 3798 Action.

DATED:  June 15, 2026

VATRENKO LAW P.C.

By:  _____
IEVGENIIA P. VATRENKO
Attorney for Defendants CEREBELLUM
NETWORKS, INC., INTERDATA
NETWORK, INC., and FRED JIN